959 A.2d 916

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Christopher KENNEDY, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 7, 2008.

Decided Nov. 20, 2008.

622

624

David Scott Rudenstein, Esq., for Christopher Kennedy.

Hugh J. Burns, Esq., Amy Zapp, Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice SAYLOR.

This is a direct appeal from a sentence of death imposed upon Appellant, Christopher Kennedy, for the first-degree murder of Michael Richardson.

### Background

On January 19, 2003, Appellant, James Richardson, his brother Jamaar Richardson, Lavar Brown, and Ronald Vann planned to rob a drug store at which Jamaar Richardson

worked.[1] According to plan, Appellant entered the store armed with a .44 caliber revolver, approached Mr. Richardson, who was the manager, and shot him in the leg. The store security guard and cashiers fled the building, and Appellant's coconspirators also fled, with most having never entered the premises.[2] Appellant proceeded to drag the victim to the front office, where there were two safes, one of which the coconspirators believed to contain $40,000 to $50,000. Officers responding to the scene heard a gunshot from within the store; observed Appellant inside the store; saw Appellant outside while in possession of the .44 caliber pistol and a bag containing approximately $2,200 taken from one of the store safes; and apprehended Appellant in the vicinity. Mr. Richardson was found in the office where Appellant left him, having suffered a fatal gunshot wound to the left side of his head.

Appellant was tried jointly with Brown and the Richardson coconspirators, who were charged, *inter alia*, with felony murder. Among other witnesses, Vann testified for the Commonwealth, describing the planning and execution of the robbery from his vantage. Notably, Vann indicated that, during the planning, Appellant said that if Mr. Richardson resisted he would kill him. Store personnel testified that, of the two safes in the manager's office, Mr. Richardson would have had access to only one-the other was accessible only by armored-car personnel. Although there were no witnesses to the actual killing, store personnel related that they remained in the vicinity and did not witness anyone enter or exit the storefront; the responding officers indicated that they did not see anyone other than Appellant exit the rear of the store; and one of the first officers to enter the store stated that the only person found there besides the victim was a patron who had hidden in a bathroom.

1. The Richardson coconspirators (James and Jamaar) were unrelated to the victim, Michael Richardson ("Mr.Richardson").

2. Apparently, the robbery plan called for several measures to be taken to secure control over the premises, but these did not occur as the coconspirators fled.

The Commonwealth also presented a ballistics expert who testified, over Appellant's objections, that the .44 caliber handgun carried by Appellant was primarily used in hunting "deer-size animals" to accomplish deep penetration. The expert also explained that a dried liquid substance was found on the muzzle of the revolver, which a DNA expert confirmed was bodily fluid matching Mr. Richardson's profile. A medical examiner opined, based on the character of gunpowder stippling around the wound to the victim's head, that the pistol that fired the shot would have been approximately twelve inches away at the time of discharge.

Appellant testified in his defense. He admitted that he perpetrated the robbery, shot Mr. Richardson in the leg, and brought him to the office to open the safe. Appellant, however, denied shooting the victim a second time and disputed the Commonwealth's contention that his codefendants were involved in the planning and execution of the robbery. Instead, Appellant claimed that he acted at the suggestion of a friend of his brother's, whom he could not identify.

During Appellant's testimony, the trial court called a recess for lunch, at which time the prosecutor requested that Appellant be directed not to discuss the case with anyone, including his counsel. Counsel indicated that, although he did not intend to speak with Appellant about the case, he believed that decisional law required that he and Appellant be permitted to confer. In response, the court asked counsel to provide the relevant law before or during the lunch hour to support his position. According to the trial court, during the seventy-six-minute recess, counsel did not provide any authority; nevertheless, Appellant was permitted to discuss the presentation of character witnesses with his attorney before resuming his testimony.

In his closing argument, the prosecutor summarized the evidence, positing that Appellant shot the victim when he was unable to open the second safe believed to contain $40,000 to $50,000. In two instances during the summation, the prosecutor referred to Appellant as a "homicidal predator."

The jury returned a verdict of guilt on the charges of first-degree murder, robbery, conspiracy, and weapons violations. At the penalty phase, Appellant was represented by co-counsel, who was appointed nineteen days before the start of the trial. The Commonwealth offered as an aggravating circumstance that the killings occurred during the perpetration of a felony, namely, robbery. *See* 42 Pa.C.S § 9711(d)(6). Appellant offered as mitigating circumstances claims that he lacked a significant history of prior convictions, *see* 42 Pa.C.S. § 9711(d)(6); he was under the influence of extreme mental or emotional disturbance, *see* 42 Pa.C.S. § 9711(e)(2); his capacity to conform his conduct to the requirements of law was substantially impaired, *see* 42 Pa.C.S. § 9711(e)(3); and his age at the time of the offenses should be regarded as mitigating, *see* 42 Pa.C.S. § 9711(e)(4), as well as pursuing the catch-all mitigator, *see* 42 Pa.C.S. § 9711(e)(8). Appellant presented testimony of family members, friends, and a mental-health expert to support the asserted mitigators. Ultimately, the jurors found that the one aggravating circumstance unanimously found—that the killing was committed in the perpetration of a felony—outweighed the sole mitigating circumstance found by any juror—the catch-all mitigator. Accordingly, the jury set the penalty at death. *See* 42 Pa.C.S. § 9711(c)(1)(iv).

Shortly thereafter, Appellant filed a motion for extraordinary relief, requesting that the death sentence be overturned or, in the alternative, that he be awarded a new penalty hearing.[3] The trial court denied Appellant's motion and formally imposed the sentence of death for first-degree murder, as well as lengthy terms of incarceration for his other offenses. After a substitution of counsel, post-sentence motions were considered on a *nunc pro tunc* basis and denied.

Presently, Appellant advances six claims, challenging the sufficiency and weight of the evidence; the trial court's decision to prohibit conferral during recess; the ballistics expert's

---

3. The motion centered on an allegation that Appellant's mental-health expert intentionally presented unfavorable opinions in the penalty phase which conflicted with his written report. The resultant proceedings also touched on mitigation counsel's preparations.

testimony concerning the impact of the murder weapon upon an animal; the prosecutor's characterization of Appellant as a homicidal predator; and the conduct of trial within a brief period of time after the appointment of mitigation counsel.

## Sufficiency and Weight of the Evidence

Appellant's first challenge is to the sufficiency of the evidence to support the first-degree murder. Appellant concedes that he perpetrated the robbery and shot Mr. Richardson's leg, but he maintains that there was insufficient evidence to establish that he fired the fatal shot. In this regard, Appellant emphasizes that: there was no agreement among the conspirators to kill Mr. Richardson; he never admitted to perpetrating the killing; and no one observed him in the act. Appellant maintains that the jury must have inappropriately inferred that he was the killer, although several coconspirators were present at the location, who could have fled during the confusion ensuing after the initial gunshot. Appellant also argues that his concession that he shot the victim in the leg cannot establish that he killed the victim, as the Commonwealth did not prove that such wound would have been a fatal one.

To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill. *See* 18 Pa.C.S. § 2501, 2502(a); *Commonwealth v. Sanchez*, 589 Pa. 43, 58, 907 A.2d 477, 486 (2006) (citing *Commonwealth v. Collins*, 550 Pa. 46, 50, 703 A.2d 418, 420 (1997)). When reviewing whether the evidence was sufficient to support a jury's findings to this effect, this Court determines whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Markman*, 591 Pa. 249, 269, 916 A.2d 586, 597 (2007) (citing *Commonwealth v. Watkins*, 577 Pa. 194, 208, 843 A.2d 1203, 1211 (2003)). In applying this standard, we bear in mind that the Common-

wealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. *See Commonwealth v. Cousar,* 593 Pa. 204, 217, 928 A.2d 1025, 1032–33 (2007); *Commonwealth v. Chmiel,* 585 Pa. 547, 574, 889 A.2d 501, 517 (2005).

In the present case, certainly Appellant's admitted conduct in intentionally shooting Mr. Richardson in his leg as part of a robbery scheme demonstrates the degree of his regard for the victim's health and safety. By Appellant's own admission, he was squarely in a position to have committed the killing in close temporal proximity to the shooting. Testimony from store personnel, coconspirators, and the responding officers tended to discount the possibility of anyone else having shot the victim. Immediately prior to his apprehension, Appellant possessed a weapon which the Commonwealth's evidence demonstrated contained bodily fluid indicative of a close-range shot, such as was delivered to Mr. Richardson's head. Appellant also had money in his possession taken from the office where the victim was shot. Furthermore, the Commonwealth presented evidence to support its theory that Appellant shot Mr. Richardson since the victim was unable to open the second safe. In this regard, as noted, Vann testified that, prior to the robbery, Appellant stated that if the manager resisted, he would kill him; and store personnel attested to the restrictions on access to the second safe. Finally, specific intent to kill is also readily inferable from Appellant's use of a deadly weapon upon a vital part of the victim's body. *See Commonwealth v. Speight,* 544 Pa. 451, 459, 677 A.2d 317, 321 (1996).

Viewing the evidence in the light most favorable to the Commonwealth, it amply supports the jury's finding that Appellant perpetrated the killing and did so with specific intent.

In a related claim, Appellant maintains that the jury's first-degree murder verdict was against the weight of the evidence, focusing his argument on the inability of any witness to testify directly that he killed the victim. The only affirmative testimony upon which he relies to support his claim that the Commonwealth's substantial evidence of guilt was offset is his own testimony that he did not kill the victim. Based on the above, it is readily apparent that the jurors made a credibility determination which was squarely within their province, and the trial court did not abuse its discretion in denying Appellant's weight-of-the-evidence claim. *See generally Commonwealth v. Keaton*, 556 Pa. 442, 464, 729 A.2d 529, 540–41 (1999) (developing the standard of review for a weight-of-the-evidence claim, centered on the discretionary nature of the trial court's decision).

### Right to Counsel

Appellant next contends he is entitled to a new trial because the trial court deprived him of his Sixth Amendment right to counsel by prohibiting him from speaking to trial counsel during the recess interrupting his testimony. Appellant concedes in his brief, however, that the record "does not reflect an objection." Brief for Appellant at 23. Thus, this claim is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Freeman*, 573 Pa. 532, 560, 827 A.2d 385, 402 (2003) (abrogating the relaxed waiver doctrine for capital direct appeals).

Appellant argues, in the alternative, that trial counsel's failure to object must be regarded as ineffective assistance *per se*. Although Appellant recognizes that ineffectiveness claims generally are deferred to collateral review proceedings, *see Commonwealth v. Grant*, 572 Pa. 48, 67, 813 A.2d 726, 738 (2002), he asserts that such deferral is not appropriate where counsel had no reasonable basis or strategic objective for failing to object. In this regard, Appellant emphasizes that this Court has held that, even during short recesses, it is reversible error for a trial court to

prohibit a defendant from conferring with his counsel. *See Commonwealth v. Vivian*, 426 Pa. 192, 197, 231 A.2d 301, 304 (1967); *see also Commonwealth v. Logan*, 456 Pa. 508, 509–10, 325 A.2d 313, 314 (1974). Further, according to Appellant, the prejudice to him was palpable, since effectively he was without counsel at a significant stage in the proceedings.

In reply, the Commonwealth develops that the state of the law has changed significantly since the issuance of the *Vivian* line of decisions upon which Appellant relies, in that the United States Supreme Court subsequently determined that a defendant who is testifying may be prohibited from conferring with his counsel during a short recess where it is appropriate to presume that nothing but the testimony will be discussed. *See Perry v. Leeke*, 488 U.S. 272, 284–85, 109 S.Ct. 594, 602, 102 L.Ed.2d 624 (1989); *cf. Albrecht v. Horn*, 485 F.3d 103, 137–38 (3d Cir.2007) (holding appellate counsel was not ineffective for failing to challenge a trial court's prohibition against attorney-client contact during a two-hour recess, where the order was not a clear violation of law in light of *Perry* ).

In view of *Perry*, the categorical approach taken in *Vivian* and *Logan* to trial-court orders limiting consultation merits revisitation. In the context of this case, on account of the ineffectiveness overlay, and for the reasons outlined in *Grant*, such review is best suited to the post-conviction stage.

### Firearm Impact

Appellant next seeks a new trial based on the testimony of the Commonwealth's ballistics expert regarding the impact that a .44 caliber revolver would have on an animal. Appellant argues that the testimony had no probative value to the main issues of the case—whether he shot and killed the victim or had the specific intent to kill. He submits that the Commonwealth intentionally adduced the testimony to incite passion and prejudice on the part of the jurors by indicating to the jurors that Appellant treated Mr. Richardson like an animal. The Commonwealth's position is that the evidence was rele-

vant, since Appellant's decision to arm himself with such a powerful weapon was further evidence of his specific intent to kill.

Evidence is relevant if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. *See Commonwealth v. Stallworth,* 566 Pa. 349, 363, 781 A.2d 110, 117 (2001). The decision of whether or not to admit evidence is committed to the sound discretion of the trial court and will only be reversed upon a showing that the trial court clearly abused its discretion. *See Commonwealth v. King,* 554 Pa. 331, 350–51, 721 A.2d 763, 772–73 (1998) (citing *Commonwealth v. Cohen,* 529 Pa. 552, 563, 605 A.2d 1212, 1218 (1992)). Here, consistent with the Commonwealth's argument, the development of the ordinary use of the type of weapon used to kill Mr. Richardson was a matter committed to the trial court's sound discretion. As that court aptly observed, "any prejudice incurred by the defendant from the subject of [the ballistics expert's] testimony has as much to do with the brutal circumstances of the crime as to the prosecutor's ... line of questioning." *Commonwealth v. Kennedy,* No. CP–51–CR–0310461–2003, *slip op.* at 13 (C.P. Phila. June 8, 2007). Upon our review of the record, we also observe that the Commonwealth did not unduly belabor the point during the examination.

### Homicidal Predator Remark

In Appellant's last guilt-phase claim, he argues that he is entitled to a new trial because the prosecutor referred to him on two instances as a homicidal predator in his summation. Appellant submits that the prosecutor thus impermissibly interjected his personal opinion into the proceedings in an effort to unfairly prejudice him. According to Appellant, the prosecutor's characterization had the unavoidable effect of forming a fixed bias against him in the jurors' minds, thus preventing them from objectively weighing the evidence. The Commonwealth responds that the prosecutor's comments were within the permissible bounds of oratorical flair in light of the

evidence that Appellant's .44 caliber revolver was a particularly powerful firearm. The Commonwealth also references *Commonwealth v. Miles*, 545 Pa. 500, 681 A.2d 1295 (1996), in which this Court found analogous references to predatory behavior on the part of criminal defendants to have been permissible. *See id.* at 513–14, 681 A.2d at 1301–02. The Commonwealth further contends that, considering that there were only two complained-of characterizations in the argument, and in light of the overwhelming evidence of Appellant's guilt, he would not be entitled to relief even if the remarks were to be deemed improper.

Prosecutors are permitted to comment on the evidence or appropriate inferences from it, and to employ oratorical flair in their arguments. *See Commonwealth v. Hawkins*, 549 Pa. 352, 373–74, 701 A.2d 492, 503 (1997). Further, this Court has imposed on defendants the obligation to demonstrate that actions challenged as prosecutorial misconduct had the unavoidable effect of undermining the neutrality of the jury so as to preclude the rendering of a true verdict. *See Commonwealth v. Fletcher*, 580 Pa. 403, 434, 861 A.2d 898, 916 (2004) (quoting *Commonwealth v. Stokes*, 576 Pa. 299, 306, 839 A.2d 226, 230 (2003)).

Consistent with the *Miles* decision referenced by the Commonwealth, the prosecutor's comments in this case were not improper. In *Miles*, the prosecutor compared codefendants to a pack of predatory animals, an image which the Court found to be consistent with the evidence, and thus, reasonably employed. *See Miles*, 545 Pa. at 513–14, 681 A.2d at 1301–02. Additionally, the Court observed that comments characterizing defendants as a "murdering, child-killing, backshooting" trio, and as "slaughterers" and "executioners" previously had been deemed proper. *See id.* (citing and quoting *Commonwealth v. Jones*, 530 Pa. 591, 617, 610 A.2d 931, 943 (1992)). Viewed in such context, the prosecutor's argument in this case appears to have been restrained.[4] Moreover, as the Common-

4. It is this author's position that, in its remarks to jurors, the government should confine itself more closely to discussing the evidence and the application of the governing law.

wealth explains, the prevailing standard requires a defendant raising a claim of prosecutorial misconduct to demonstrate substantial prejudice. Here, we sustain the trial court's determination that Appellant failed to point to prejudice of such degree. *See Kennedy,* No. CP–51–CR–0310461–2003, *slip op.* at 14 ("Nothing else of record suggests that these two references rendered the jury incapable of determining the facts that, as was discussed above, overwhelmingly supported the defendant's guilt of first degree murder.").

## Absence of Continuance

In his final claim, Appellant maintains that he is entitled to a new penalty hearing, because the calendar and trial courts erred in not acting *sua sponte* to continue trial, where mitigation counsel was appointed only nineteen days prior to the start of the trial. Appellant argues that, given the brief period of time for preparation, and in light of trial counsel's failure to conduct any mitigation investigation, mitigation counsel simply could not have been adequately prepared to proceed at the penalty phase. Appellant claims that, although mitigation counsel did not request a continuance, the court had a duty to delay the trial to permit adequate preparation. Further, Appellant notes that, due to prior obligations, mitigation counsel was unable to attend a substantial part of the trial and observe evidence that he asserts would have contributed to the mitigation defense in the sentencing proceedings. Appellant also contends that it is clear on the record that his mental-health expert was unprepared to testify at the penalty phase, in large part because of the time constraints. Finally, Appellant alludes to several instances of alleged deficient stewardship on the part of mitigation counsel.

For its part, the Commonwealth argues that Appellant's claim should be deemed waived because mitigation counsel never requested a continuance or otherwise objected to the trial date. The Commonwealth notes that, despite the late appointment, there is nothing in the record that would have put the trial court on notice that counsel was in need of additional time. In fact, the Commonwealth observes, mitiga-

tion counsel indicated in the hearings on Appellant's motion for extraordinary relief that he did not request a continuance because he was adequately prepared. The Commonwealth also observes that Appellant references no authority for the proposition that a trial court is required to continue a case *sua sponte* in light of a late appointment. To the contrary, the Commonwealth asserts, the courts have not regarded late appointments as *per se* prejudicial. As a result, the Commonwealth maintains that Appellant's claim must await collateral review, where he may attempt to adduce evidence to demonstrate deficient stewardship.

■ Appellant's tactic to avoid waiver of his direct claim is to argue, in substance, that the time period available to mitigation counsel to prepare was so short that the trial court committed fundamental error and/or that he was effectively denied counsel. This Court, however, has abrogated the practice of reviewing claims of basic or fundamental errors in the absence of a timely objection or exception. *See Commonwealth v. Clair*, 458 Pa. 418, 423, 326 A.2d 272, 274 (1974). We have also rejected arguments that appointments shortly before trial rise to the level of a constructive denial of counsel, where meaningful representation is provided. *See Commonwealth v. Williams*, 597 Pa. 109, 135–36, 950 A.2d 294, 310 (2008) (citing, *inter alia, United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (holding that a newly-appointed attorney, who was afforded only twenty-five days to prepare for trial in a case which the government spent four and one-half years investigating and preparing was not *per se* ineffective)).

■ In light of *Clair* and *Williams*, and in the absence of a timely request or objection, it is apparent that the only appropriate claim which may be available to Appellant is of deficient stewardship on the part of his counsel for failing to ask for a continuance and/or for inadequately preparing. Such a challenge is appropriately deferred to post-conviction review under *Grant*.[5] Additionally, we decline Appellant's

5. Although mitigation counsel did address certain aspects of his preparation for the penalty phase at the hearings on the motion for extraordi-

invitation to create a series of bright-line rules applicable to this context.

## Statutory Review

At this juncture, we are required to affirm the death sentence unless we find that: (i) the sentence was the product of passion, prejudice, or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance. *See* 42 Pa.C.S. § 9711(h)(3). After reviewing the record, we are persuaded that the sentence imposed upon Appellant was not the product of passion, prejudice, or any other arbitrary factor, but rather, resulted from properly introduced evidence that Appellant intentionally and deliberately killed Mr. Richardson, as well as the jurors' appropriate service of their function in capital litigation under the governing statutory scheme. *See* 42 Pa.C.S. § 9711. Finally, the evidence was sufficient to support the aggravating factor found by the jury—killing while in perpetration of a felony (robbery), *see* 42 Pa.C.S. § 9711(d)(6)—in light of the Commonwealth's substantial evidence demonstrating Appellant's commission of the murder and underlying robbery, including Appellant's own concession to the latter.

## Conclusion

The judgment of sentence is affirmed, and the Prothonotary is directed to transmit the complete record of this case to the Governor in accordance with Section 9711(i) of the Judicial Code, 42 Pa.C.S. § 9711(i).

Chief Justice CASTILLE, and Justice EAKIN and BAER, Justice TODD, Justice McCAFFERY and Justice Greenspan join the opinion.

nary relief, the trial court explained that neither the hearing nor its review at that stage was comprehensive, and that further development on post-conviction review would be appropriate. *See Kennedy,* No. CP–51–CR–0310461–2003, *slip op.* at 24 n. 16.