J. S33004/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KELVIN MONTERO, | : | No. 1452 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, December 20, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0000977-2012

BEFORE:  FORD ELLIOTT, P.J.E. DONOHUE AND LAZARUS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JULY 08, 2015**

This is a direct appeal from the judgment of sentence entered December 20, 2013, in the Court of Common Pleas of Philadelphia County following Kelvin Montero's convictions of first-degree murder, carrying a firearm without a license, and possessing an instrument of crime.[1]  We affirm.

The facts, as aptly summarized by the trial court, are as follows:

> In the early morning hours of September 26, 2011, 16-year-old Jesus Rivera (Jesus) was still out

---

[1] On July 22, 2013, appellant was tried for the charges of murder, conspiracy to commit murder, carrying a firearm without a license, and possessing an instrument of crime; appellant was found guilty of conspiracy to commit murder and sentenced to a term of 18 to 40 years of imprisonment.  A mistrial was declared as to the remaining three charges. Appellant was retried for those three crimes at the instant trial, which began on December 17, 2013.  An appeal is pending before this court concerning the conviction of conspiracy at No. 452 EDA 2014

celebrating the Puerto Rican Day Parade in his Philadelphia neighborhood when he was struck and killed by two stray gunshots fired by Kelvin Montero (the defendant). After the parade, which had taken place on September 25, 2011, people were celebrating all along the area of 5th and Cambria Streets, congregating on street corners, playing music, and hanging out in and around their vehicles. This was the unofficial parade "after party."

It was at the Puerto Rican Day Parade after party that the defendant fought with his girlfriend in front of a street of witnesses, and punched Saul Rodriguez (Rodriguez) in the face.[Footnote 5] At approximately 8:30 P.M., Rodriguez was standing near a black Lincoln Town Car full of girls, when the defendant walked up to the car, pulled his girlfriend, Cynthia Vasquez (Vasquez), out of it, and dragged her down the street. Angel Ducvo (Ducvo)[Footnote 6] and Rodriguez saw the defendant strike Vasquez. After bystanders tried to intervene, a fight ensued but was broken up by the police. Later, the defendant punched Rodriguez in the face when Rodriguez was trying to talk to the girls from the Lincoln Town Car again. After Rodriguez was punched, John Perez,[Footnote 7] who was described as a bald-headed, tattooed man, got out of a burgundy red pickup truck and approached Rodriguez, yelling: "you all don't know who you're messing with. That's my boy. We'll be back. You don't know who you're fucking with."

> [Footnote 5] Rodriguez provided a statement about this encounter to Detective Joseph Bamberski. Exhibit C-19. When Rodriguez was called to testify, he recanted his prior statement. Rodriguez admitted that the signature on the statement appeared to be his, but stated that he did not remember signing it. Rodriguez's account of the events of September 25, 2011 was admitted for its truth pursuant to Brady/Lively. Commonwealth v. Brady, 71 A.2d 34, 36

(Pa.Super. 1987); <u>Commonwealth v. Lively</u>, 703 A.2d 467 (Pa.Super. 1997).

[Footnote 6] Angel Ducvo's nickname is "Abo." At trial, Ducvo denied telling the truth in the statement he made when he was brought into the Homicide Unit on September 28, 2011. Exhibit C-20. Ducvo's prior statement was also admitted for its truth pursuant to <u>Brady</u>/<u>Lively</u>.

[Footnote 7] Perez was initially charged as a co-defendant. On July 15, 2013, Perez entered a negotiated guilty plea to murder of the third degree (F-1), criminal conspiracy (F-1), and persons not to possess firearms (F-2). 18 Pa.C.S. §§ 2502(c), 903, and 6105(a)(1), respectively. Per the negotiations, this Court sentenced Perez to an aggregate term of not less than 22-and-a-half years nor more than 45 years[`] imprisonment.

Later that night, after 12 A.M., Angel Figueroa (Figueroa), who had also witnessed the earlier fight, saw the defendant and Perez again at 5th and Cambria Streets. The defendant was wearing black boots and a black hooded sweatshirt, and asked Figueroa for the man who was fighting earlier. Figueroa testified that the defendant had his hands under his sweatshirt, as if to indicate that he had a gun on him. A short time later, the defendant[Footnote 8] opened fire, firing 30 shots in all directions.[Footnote 9]

[Footnote 8] Keyshla Rivera, Jesus's sister, identified the defendant as the shooter. Ducvo also identified the defendant as the shooter pursuant to a photo array compiled by the police. During the shooting, Ducvo did not actually see the shooter's face, but he was able to recognize the defendant as

the shooter based on their earlier encounter on Westmoreland Street 20 minutes before the shooting began.

[Footnote 9] At the crime scene, 30 fired cartridge casings (FCCs) were found. At 12:40 A.M. Officer Brian Waters responded to a call at 5th and Cambria Streets to look for a burgundy Ford F-150 pickup truck. Officer Waters stopped the truck, which was being driven by Perez. The Ford pick-up was taken in to the police station as evidence. A later search of the truck revealed a Glock 9mm handgun in a hidden compartment on the right side of the front dashboard. Additionally, two handgun magazines were found: one empty 30-round magazine and another full 15-round magazine. Officer Lawrence Flagler, a ballistics expert, determined that all 30 FCC's were fired from the 9mm handgun found in that truck.

After midnight on September 26, 2011, Jesus and his sister Keyshla Rivera (Keyshla) were standing on the corner of 5th and Cambria Streets, waiting for Keyshla's friend to pick them up, when they heard people shouting, "they're shooting!" Upon hearing the gunshots, Keyshla glanced in the direction of the commotion, and witnessed the defendant in all black, "shooting like crazy" down the street. Keyshla and Jesus ran in the opposite direction of the shooter down Fairhill Street, attempting to seek safety inside two homes. After being turned away from the two homes on Fairhill Street, Keyshla told her brother to duck down behind two cars for cover. Finally, after the shooting ceased, Keyshla noticed her brother, Jesus, on the ground screaming for help. Jesus was struck by two bullets, one to the right side of his chest that went through his heart and lungs, and a second to the right upper arm.[Footnote 10]

> [Footnote 10] Associate Medical Examiner, Dr. Aaron Rosen, testified that one of the bullets penetrated the right side of Jesus's body below his armpit. This bullet passed through the thoracic cavity and Jesus's right lung, causing internal bleeding. Dr. Rosen stated that the other bullet was retrieved in the upper right arm and fractured Jesus's humerus.
>
> The search for the defendant commenced on September 28, 2011, after an arrest warrant had been issued. On November 1, 2011, Detective Burke found the defendant on the second floor of a home in the Hunting Park neighborhood of Philadelphia, and he was arrested.

Trial court opinion, 10/29/14 at 2-4 (citations to the notes of testimony omitted).

Appellant was sentenced to life imprisonment for first degree murder.[2] On December 27, 2013, a timely post sentence motion was filed; the motion was denied on April 23, 2014. On May 9, 2014, a timely notice of appeal was filed.

Herein, appellant presents the following two issues for our review:

1) Whether the evidence was insufficient to support the verdict of guilt as to the charge of first degree murder for lack of specific intent to kill[?]

2) Whether the verdict was against the weight of the evidence as to the conviction for first

---

[2] The sentence for murder in the first degree was ordered to run concurrent with the sentence imposed on September 10, 2013 for conspiracy. As to the charge of carrying a firearm without a licesne, appellant was sentenced to a concurrent term of two to seven years' imprisonment; as to the charge of PIC, appellant was sentenced to a concurrent term of one to five years' incarceration.

> degree murder, as the crime scene facts indicate that the shooter aimed at a car, which conduct is evidence of reckless endangerment of other people, but not evidence of specific intent to kill[?]

Appellant's brief at 4.

We begin by reviewing the sufficiency of the evidence for appellant's first-degree murder conviction. "To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." ***Commonwealth v. Montalvo***, 986 A.2d 84, 92 (Pa. 2009), citing ***Commonwealth v. Kennedy***, 959 A.2d 916, 920 (Pa. 2008); 18 Pa.C.S.A. § 2502(a). Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body. ***Commonwealth v. Rega***, 933 A.2d 997, 1009 (Pa. 2007).

We conclude, without hesitation, that when viewed in the light most favorable to the Commonwealth as verdict winner, the evidence is sufficient to support appellant's conviction of first-degree murder. The evidence clearly suggests a presence of mind belying appellant's contentions he lacked specific intent. A day prior to the shooting, appellant's accomplice shouted, "you all don't know who you're messing with. That's my boy. We'll be back. You don't know who you're fucking with." (Notes of testimony, 12/17/14 at 155.) Twenty minutes before the shooting, Figueroa witnessed

appellant and his cohort, Perez, looking for the men they had fought earlier. Figueroa testified appellant had his hands under his sweatshirt, as if to indicate that he had a gun. (*Id.* at 165-166.) A short time later, appellant fired 30 shots, in all directions, down a street that was populated with people celebrating the Puerto Rican Day Parade. (*Id.* at 173.) Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to support a finding that Rivera was unlawfully killed, appellant killed him, and he acted with malice and specific intent to kill. ***See Commonwealth v. Smith***, 861 A.2d 892 (Pa. 2004) (where appellant, along with his co-conspirator, fired multiple shots into crowd of people gathered outside club and one bullet struck and killed victim, evidence was clearly sufficient to sustain first-degree murder conviction, regardless of who fired fatal shot); ***Commonwealth v. Gibson***, 688 A.2d 1152 (Pa. 1997) (where defendant and co-conspirators went into crowded bar with intent of committing robbery, fired shots into crowd, and killed two patrons, such evidence supported first-degree murder conviction, regardless of who fired fatal shots). No relief is due.

Next, appellant contends that his first-degree murder conviction was against the weight of the evidence, again disputing the jury's determination that he possessed specific intent to kill. (Appellant's brief at 13-166.) Our standard of review is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question

of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis omitted) (citations omitted).

Appellant's weight of the evidence argument is grounded in his theory that his aggression was directed at the car struck by some of the bullets he fired rather than at others in range of the gunfire, especially Rivera. This contention amounts to an assertion that his version of events should have

been credited over the Commonwealth's. In declining to find that the conviction was against the weight of the evidence, the trial court found the verdict reached was not so contrary to the evidence as to shock one's sense of justice. (Trial court opinion, 10/29/14 at 5-6.) We find no abuse of discretion in such a conclusion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015