J-S56041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CARRINGTON KEVON JOSEPH, | |
| Appellant | No. 2033 MDA 2016 |

Appeal from the Judgment of Sentence November 12, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002224-2014

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JULY 14, 2016**

Carrington Kevon Joseph (Appellant) appeals from the judgment of sentence of life imprisonment entered in the Court of Common Pleas of Lancaster County on November 12, 2015, following a bench trial[1] and Appellant's conviction of first-degree murder.[2]  Upon our review of the record, we affirm.

The trial court summarized the relevant facts herein as follows:

> At trial, the Commonwealth established the following, gruesome facts. On May 2, 2014, [Appellant] stabbed the victim, his wife, more than eighty (80) times. *Notes of Trial Testimony*

_____

[1] On June 12, 2014, the Commonwealth filed a notice of its intent to seek the death penalty.  In exchange for Appellant's waiving his right to a jury trial, the Commonwealth agreed not to pursue the death penalty. N.T., Pretrial Hearing, 4/20/15, at 3-15.
[2]  18 Pa.C.S.A. § 2502(a).


*Former Justice specially assigned to the Superior Court.

("N.T.T. ") at 235-252; *Commonwealth's Exhibits* 13, 18-21. The majority of the wounds were to the victim's abdomen, neck, and head. *Id*. During the attack, [Appellant] broke two knives and made multiple trips to the kitchen to retrieve additional knives. *N.T.T*. at 142-149, 161-166; *Commonwealth's Exhibits* 3, 5-10, 13. At one point, the victim attempted to stagger out of the apartment's front door and, as the victim's family attempted to assist her, [Appellant] pointed the knife at them and told them to move back before they too got stabbed. *N.T.T.* at 53 -57, 104 -108, 111-117; Commonwealth's Exhibit 13. [Appellant] then dragged the victim back into the apartment and closed the door to continue his attack. *N.T.T*. at 116-117. During the majority of this extended attack, the victim was laying [sic] helplessly on the ground. *N.T.T*. at 254-255, 260-261, *Commonwealth's Exhibit* 13. [Appellant's] infant children were seated in their car seats in the room in which the attack took place. *Notes of Pretrial Hearing* at 25-26. [Appellant] was described as calm throughout this whole incident and, after being taken into custody, calmly recounted these facts, in great detail, with little remorse shown. *N.T.T*. at 206; *Commonwealth's Exhibit* 13.

Trial Court Opinion, filed 1/8/16, at 2-3.

Appellant filed a timely notice of appeal on November 19, 2015, and the parties have complied with Pa.R.A.P. 1925. In his brief, Appellant presents a single issue for our review:

> 1. The evidence was insufficient to sustain a conviction for first-degree murder. More sufficiently, insufficient evidence was presented that [A]ppellant acted with malice and/or the specific intent to kill.

Brief for Appellant at 4.

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need

not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Slocum*, 86 A.3d 272, 275-76 (Pa.Super. 2014) (citations omitted).

Section 2502 of the Crimes Code, 18 Pa.C.S.A. § 2502, defines murder of the first degree as follows: "**(a) Murder of the first degree.--**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). As such, to obtain a conviction of first-degree murder, the Commonwealth must have demonstrated that:

a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Montalvo, M.,* 604 Pa. 386, 986 A.2d 84, 92 (2009) (quoting *Commonwealth v. Kennedy,* 598 Pa. 621, 959 A.2d 916, 921 (2008)); *accord* 18 Pa.C.S. § 2502(a) & (d) (defining first degree murder as an "intentional killing," which is further defined as a "[k]illing by means of

- 3 -

poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing."). The Commonwealth may prove the specific intent to kill necessary for first[-]degree murder wholly through circumstantial evidence. *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1009–10 (2007).

*Commonwealth v. Murray*, 623 Pa. 506, 528-29, 83 A.3d 137, 151 (2013). In addition, our Supreme Court has determined that the repeated use of a deadly weapon upon vital parts of a victim's body is sufficient to demonstrate a specific intent to kill beyond a reasonable doubt. *Commonwealth v. Mitchell*, 588 Pa. 19, 44, 902 A.2d 430, 445 (2006).

Herein, Appellant does not dispute that he stabbed the victim and that the manner of her death was a homicide. Rather, Appellant challenges the third element of first-degree murder and maintains that the evidence was insufficient to prove that he possessed the requisite malice and or specific intent to kill. Essentially, Appellant claims that he had diminished capacity at the time of the murder and, thus, lacked such specific intent. Specifically, Appellant reasons that:

> The evidence presented at trial in the *case sub judice*, clearly showed that the Appellant and Decedent engaged in a very heated argument, which tragically escalated to both parties scrambling to the kitchen to get a knife, resulting in a struggle which culminated in the Appellant repeatedly stabbing the Decedent in a maniacal rage. Clearly, Appellant's conduct was not the product of specific intent, where the Decedent first threatened to stab the Appellant and was actually the first person to run to the kitchen to retrieve a knife, and Appellant actually blacked out during the altercation and has no memory of most of the assault. Accordingly, there is insufficient evidence to establish the requisite *mens rea* to support Appellant's conviction for first degree murder.

- 4 -

Brief for Appellant at 14-15 (emphasis in original). Appellant further posits that he remembers stabbing his wife only a single time "in the heat of passion" as he "attempted to prevent [her] from carrying out her threat to stab him" and, therefore, his actions were not premeditated and deliberate acts. *Id*. at 16.

At the outset we note that while Appellant argued in his closing argument at trial he acted in self-defense, N.T., 11/12/15, at 284-300, Appellant conflates the theories of self-defense and diminished capacity in his appellate brief. These theories are not mutually exclusive and could have been presented together. *See Commonwealth v. Hutchinson*, 611 Pa. 280, 24 A.3d 277, 314 (2011). Notwithstanding, when viewed in a light most favorable to the Commonwealth as the verdict winner, we find the evidence does not establish that either theory is plausible.

A defense of diminished capacity admits liability while contesting the degree of culpability based upon a defendant's inability to possess a particular mental state. *Commonwealth v. Mitchell*, 588 Pa. 19, 45, 902 A.2d 430, 446 (2006)(citation omitted). "In order to assert a successful diminished capacity defense, a defendant must provide extensive psychiatric testimony establishing a defendant suffered from one or more mental disorders which prevented him from formulating the specific intent to kill." *Id*. (citation omitted).

18 Pa.C.S.A. § 505(a) sets forth the elements of self-defense as follows:

§ 505. Use of force in self-protection

(a)   Use of force justifiable for protection of the person.—
The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a).  This court has found that:

[w]hen a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa.Super. 2009) (citations and quotation marks omitted), *appeal denied*, 987 A.2d 161 (Pa. 2009).

At the conclusion of trial, the trial court sitting as fact-finder expressly found "simply absurd" Appellant's claim that he had acted in self-defense. In support of this finding, the trial court noted, *inter alia*, Appellant who was an "obviously healthy, muscular adult male," was not stabbed a single time, while his wife had sustained 82 stab wounds. The court further stressed Appellant admitted to police his wife never had held a knife.  N.T., 11/12/15, at 308-09.   The trial court further noted that while he indicated in his

statement to police he had blacked out after inflicting the first stab wound upon his wife, this assertion was contradicted by other portions of his statement wherein he clearly recounted much of the incident and displayed a calm demeanor while doing so. *Id*. at 310-11.

Indeed, the evidence presented at trial established that the victim was stabbed repeatedly in her face, neck and torso area. A knife left lodged in her back had to be removed by emergency personnel as it was hindering CPR. N.T., 11/10/15, at 196. Dr. Wayne K. Ross, a forensic pathologist who performed the autopsy, testified regarding Appellant's injuries and determined the cause of death was multiple stab wounds and the manner of death was a homicide. N.T., 11/10/15, at 251. He further remarked that while she may have died as a result of a single stab wound to her neck, her wounds were sustained from a defensive, rather than an offensive, posture. N.T., 11/10.15, at 252, 256. Moreover, while he could not speak definitively as to the amount of time that transpired during the brutal attack, Dr. Ross indicated that in light of the evidence of movement around the scene and that fact that the victim sustained 82 stab wounds inflicted by multiple bent and broken knives, he believed "[t]hat would take some time." *Id*. at 260-61.

The victim's sister Keina Cowan testified that as Appellant and her sister argued, she ran to a neighbor's home to call police, because Appellant had confiscated their cell phones. As she fled, she could hear the victim

apologize to Appellant and plead with him to stop. N.T., 11/9/15, at 49-50. When she returned to the home, she found the door had been locked and proceeded to kick it in. She discovered her sister alone in the living room bleeding on the couch. *Id*. At 50-51. Ms. Cowan fled again to get help, and when she returned with the victim's friend and neighbor Porschia Garcia, the two were unable to gain entry to the home, because someone was holding the door shut. *Id*. at 52. Thereafter, the victim fell out of the house, and Ms. Cowan and Ms. Garcia attempted to pull her away. Appellant appeared in the doorway and ordered the women to retreat, held a knife to Ms. Cowan's forehead and threatened to stab them if they refused to leave. Next, he pulled the victim's hair and stabbed her in the neck while the women looked on. *Id*. at 54-56.

Detective Brian Freysz, the prosecuting officer, testified that when he arrived at the scene he noticed Appellant was covered in blood and that "he seemed calm." N.T., 11/10/15, at 204-05. At approximately 11:30 that morning he conducted an interview with Appellant at which time Appellant clearly understood the questions posed and detailed what had transpired earlier. Although Appellant also indicated that he had "blacked out," Officer Freysz explained Appellant revealed to him "exact details" of the murder, and Officer Freysz believed Appellant had told him "the truth of exactly what transpired." *Id*. at 215, 222-27.

The record is devoid of any expert or lay testimony to establish Appellant's actions were a brief, spontaneous attack which occurred without deliberate thought and action. Appellant stabbed his wife scores of times, during which he had the wherewithal to stop his brutal attack, retrieve additional knives, threaten to stab other women, lock and close the door, and drag his victim back inside the home to continue his savagery. He was able to recount calmly and methodically his actions to police shortly thereafter.

Any attempt on Appellant's part to claim he acted in self-defense is also negated by the record evidence and belied by the statement he coherently provided to police after the murder. Ms. Cowan heard her sister plead with Appellant to stop and saw her immobilized due to her injuries. If Appellant had at any time felt threatened, as his wife lay bleeding on the doorstep he could have fled the premises when the women came to her aid; instead, he threatened Ms. Cowan and Ms. Garcia and stabbed the victim in the neck in their presence.

Clearly, Appellant's overall conduct was not the result of a heated exchange between the victim and him, nor were his actions the product of self-defense. As such, we conclude the Commonwealth presented sufficient evidence to establish Appellant's intent to commit first-degree murder.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2016