[J-37-2018] [MO: Todd, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 745 CAP |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Sentence entered on April 27, 2017 in |
| | : | the Court of Common Pleas, Pike |
| v. | : | County, Criminal Division at No. CP- |
| | : | 52-CR-0000019-2015 |
| | : | |
| ERIC MATTHEW FREIN, | : | ARGUED: May 17, 2018 |
| | : | |
| Appellant | : | |

## CONCURRING OPINION

**JUSTICE DONOHUE**                                **DECIDED: April 26, 2019**

I join the Majority's opinion except with respect to its reasoning in connection with its disposition of Frein's challenge to the admission of victim impact evidence. In this regard, I find compelling Justice Wecht's contention that at some point, the quantum of admitted victim impact evidence may overwhelm any notions of fundamental fairness in the sentencing proceeding, resulting in a violation of the defendant's due process rights. Concurring and Dissenting Op. ("CDO") at 17. I likewise agree with Justice Wecht that in such circumstances, we cannot (as does the Majority here) rely upon the general presumption that the jury followed the trial court's instructions not to consider any victim impact evidence until after it completed its inquiry concerning mitigating and aggravating circumstances. *Id.* at 21. In some cases, the extent and nature of emotionally compelling victim impact testimony may overwhelm a jury's ability to rationally and reasonably

evaluate the existence, or lack thereof, of particular mitigating and aggravating circumstances.

Despite these philosophical agreements with Justice Wecht's underlying premises, I must nevertheless concur in the result reached by the Majority; namely, to deny relief on Frein's victim impact evidence challenge. Section 9711(a)(2) of the Pennsylvania Sentencing Code defines victim impact evidence as "evidence concerning the victim and the impact that the death of the victim has had on the family of the victim." 42 Pa.C.S. § 9711(a)(2). This Court has ruled that, in accordance with section 9711(a)(2), it is "wholly appropriate and admissible at the sentencing phase of a capital case" for the Commonwealth to offer into evidence "personal account[s] describing the devastating impact the murder[] had on the surviving families." *Commonwealth v. Flor*, 998 A.2d 606, 634 (Pa. 2010) (quoting *Commonwealth v. Baumhammers*, 960 A.2d 59, 93 (Pa. 2008)); *see also Commonwealth v. Rega*, 933 A.2d 997, 1023 (Pa. 2007) (affirming, under section 9711(a)(2), trial court's admission of victim impact testimony by the decedent's brother because it had been "offered to impress upon the jury the human effects of [the a]ppellant's crimes").

Importantly for present purposes, however, this Court has placed two significant limitations on the nature of victim impact testimony that may be admitted in the penalty phase of a capital trial. First, victim impact evidence may not consist of "mere generalizations of the effect of the death on the community at large." *Commonwealth v. Eichinger*, 915 A.2d 1122, 1139-40 (Pa. 2007). Second, victim impact evidence must be about the impact of the victim's death on the family rather than general information about particular characteristics of the victim presented in a vacuum. *See Commonwealth v.*

*Means*, 773 A.2d 143 158 (Pa. 2001) ("Generalizations of the effect of the victim's death on the community at large, or information concerning the particular characteristics of the victim presented in a vacuum will not fall within the ambit of [section 9711(a)(2)].");[1] *Commonwealth v. Singley*, 868 A.2d 403, 415 (2005) ("The cumulative effect of the testimony clearly demonstrates that the deaths had a profound effect on the respective families. The testimony was not generalized statements on the effect of deaths of Christine Rohrer and James Gilliam on the community, nor did it concern any of the victim's particular characteristics.").

With these limitations in mind, it is clear, as the Majority essentially concedes and Justice Wecht points out, that a substantial quantum of the "victim impact evidence" introduced by the Commonwealth in the penalty phase of Frein's trial was not proper victim impact evidence at all. Over the course of two days, the Commonwealth presented the testimony of ten witnesses, including Trooper Dickson's wife, mother, father and sister. While some of this testimony clearly related the impact of the murder on his family, much of it arguably did not. As described by Justice Wecht, one example would be the highly detailed testimony of Trooper Dickson's widow as to the couple's fertility struggles, her difficult pregnancy and complications associated with the birth of the couple's second

---

[1] In *Commonwealth v. Hitcho*, 123 A.3d 731 (Pa. 2015), the Court appeared to dispute the limitations on victim impact evidence outlined in *Means*, indicating that "[v]ictim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question." *Id.* at 761 (quoting *Flor*, 998 A.2d at 633). In my view, however, victim impact evidence must, by definition, be closely tied to the **impact** of the murder. General information of the victim's personal characteristics "presented in a vacuum," *Means*, 773 A.2d at 158, does not constitute "impact" evidence at all. Moreover, section 9711(a)(2) expressly limits the type of impact that may be addressed in a penalty phrase proceeding to the impact of the murder on the victim's family, without any reference to impact on the community at large. 42 Pa.C.S. § 9711(a)(2).

child.  *See* CDO as 19.  Four of Trooper Dickson's colleagues with the Pennsylvania State Police testified to their respect for him as a man and a fellow officer.  N.T., 4/20/2017, at 99-103 (Sergeant Michael Walsh), 111-29 (Lieutenant Sean Jennings); N.T., 4/21/2017, at 12-20 (Major John Dougherty, retired), 20-39 (Sergeant Derek Felsman).  They described for the jury letters of accommodation, awards and promotions he received, including instances in which he exemplified skill and bravery as a trooper.  *See, e.g.*, N.T., 4/20/2017, at 114-16; N.T., 4/21/2017, at 14-19, 30-31.  They also related their shared trials and tribulations with him during their time together at training classes and as young officers on the force.  *See, e.g.*, N.T., 4/20/2017, at 101-03; N.T., 4/21/2017, at 21-29.  Another witness related for the jury how Trooper Dickson had saved her life by preventing her from committing suicide in the immediate aftermath of her son accidentally shooting and killing her husband.  N.T., 4/21/2017, at 9-12.  Trooper Alex Douglass, who was shot by Frein during the events resulting in Trooper Dickson's murder, testified regarding his continuing medical complications from his severe injuries.  N.T., 4/20/2017, at 131-35.  Finally, there was the video of Trooper Dickson's cadet class graduation ceremony, including the speech by then-Deputy District Attorney Mark Tranquilli, as well-described by both the Majority and Justice Wecht, relating to the prior murder of another state trooper.  N.T., 4/21/2017, at 80.

Critically, Frein (through his counsel) did not object to the introduction of any of this evidence on the grounds that it was inadmissible under the definition of victim impact evidence set forth in section 9711(a)(2), including the above-described limitations on such evidence as established by this Court (i.e., that the evidence reflected impact on the community in general or on particular characteristics of the victim unrelated to impact on

the family). We cannot presume how the trial court here would have ruled on any of the statutorily-authorized objections that counsel could have made but did not, and I do not pretend to do so here. If the available evidentiary objections had been asserted and the trial court had granted some or most of them, we would have a very different, and considerably smaller, record before us now – which may or may not have supported Frein's due process claim. Alternatively, if the trial court had denied the statutory objections, Frein could have challenged these evidentiary rulings on appeal to this Court as grounds for a new penalty phase trial, while simultaneously presenting his due process constitutional arguments.

It is for this reason that I cannot agree with Justice Wecht's contention that Frein's failure to assert objections under section 9711(a)(2) is irrelevant to the due process claim he now asserts. It is axiomatic that in order to preserve a claim for appeal, a party must make a timely and specific objection at trial. *See, e.g., Commonwealth v. Hairston*, 84 A.3d 657, 672 (Pa. 2014), *cert. denied*, 135 S.Ct. 164 (2014) (finding challenge to admission of victim impact evidence waived for failure to object to its admission at trial); *Commonwealth v. Ballard*, 80 A.3d 380, 406 (Pa. 2013), *cert. denied*, 573 U.S. 940 (2014) ("[I]t was still incumbent upon appellant to object [to allegedly improper victim impact evidence] and to give the trial court the option of a corrective measure."); *Commonwealth v. Kennedy*, 959 A.2d 916, 922 (Pa. 2008), *cert. denied*, 556 U.S. 1258 (2009); *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008); *Commonwealth v. May*, 887 A.2d 750, 761 (Pa. 2005); Pa.R.A.P. 302. Even constitutional claims are waived if they are not raised before the trial court. *Kennedy*, 959 A.2d at 922 (finding Sixth Amendment issue waived where defendant failed to raise objection on this basis at trial). The penalty

of waiver is the result for failing to object, even in capital appeals. *Hairston*, 84 A.3d at 672; *Ballard*, 80 A.3d at 406. In my view, then, a defendant cannot fail to object based upon statutorily available exceptions to the introduction of evidence and then demand a new trial on the grounds that the sheer quantum of evidence introduced against him violated his due process rights. To hold otherwise would permit a capital defendant, through counsel, to create for himself or herself the grounds for a new penalty phase trial without giving the trial court the ability to appropriately consider and exclude testimony. This is particularly true in a case like this one, where some of the evidence was plainly ripe for an objection that it violated the parameters of section 9711(a)(2). For example, neither Trooper Douglass' vivid testimony regarding his own injuries nor Attorney Tranquilli's graduation ceremony remarks appear to bear any clear relationship to the impact of Trooper Dickson's murder on his family.[2]

As this Court has often said, our trial courts must act as the gatekeepers for the introduction of victim impact evidence, which must of necessity include ensuring compliance with the statutory requirements. *See, e.g., Eichinger*, 915 A.2d at 1139 ("[O]ur trial judges are more than capable of overseeing the presentation of evidence so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom."). We have also observed, however, that "relief is always available to correct

---

[2] Justice Wecht is of the mind that "[t]he constitutional and statutory claims are distinct. The viability of one is not dependent upon taking any action relative to the other." CDO at 18 n.4. While I agree that the claims are distinct, I do not agree that one is not dependent on the other. The assertion of statutory objections is directly related to the viability of a due process claim based on the nature and quantity of the victim impact evidence admitted. *See id.* The viability of statutory objections, had they been made by Frein's counsel and ruled on by the trial court, could have affected the nature and quantity of victim impact evidence received by the jury, which, in turn, necessarily effects whether there is a viable due process claim.

those situations where unduly prejudicial information is introduced which renders the sentencing process fundamentally unfair." *Means*, 773 A.2d at 150 (citing *Payne v. Tennessee*, 501 U.S. 808, 831 (1991) (O'Connor, J., concurring)); *Commonwealth v. Williams*, 854 A.2d 440, 446 (Pa. 2004). In either case, statutorily available objections must be made to provide the trial court with the opportunity to control, and correct, if need be, the admission of alleged victim impact evidence before the defendant may fairly challenge the trial court's failure in this regard. *Hairston*, 84 A.3d at 672; *Ballard*, 80 A.3d at 406. Frein, through his counsel, did not provide the trial court with the opportunity to do so here.[3]

For these reasons, I must concur in the result reached by the Majority to deny Frein a new penalty phase trial. In my view, given the record currently before us, consideration of a new penalty phase trial must await collateral review.

---

[3] I find counsel's inaction critical because the failure to make the appropriate objections contributed to the prejudicial state of the record against Frein. Justice Wecht describes Frein's due process challenge as being based the nature and quantity of victim impact evidence admitted at trial. CDO at 17. The problem with this premise is that some of this evidence, as described above and acknowledged by the Majority and Justice Wecht, *see* MO at 35-36; CDO at 20-21, plainly was not victim impact evidence as defined by statute. Thus, the wholesale consideration of all of the evidence received, even that which was statutorily inadmissible with no objection raised, provides a faulty foundation for a due process challenge based on the quality and quantity of victim impact evidence admitted.

Frein's counsel objected to various items of evidence on the grounds that it was excessive and/or cumulative. *See* N.T., 4/20/2017, at 75-77, 81-82, 95, 105. The trial court denied these objections, indicating on at least one occasion that there is no "textbook amount" of permissible victim impact evidence. N.T., 4/21/2017, at 48. Even then, Frein's counsel failed to lodge statutory objections. I reiterate that had he done so, it is possible that we would have a different record before us. I am unwilling to undertake a due process analysis in this context, where the record contains evidence that plainly was not admissible as victim impact evidence, and this impermissible evidence contributes to the "quality and quantity" of evidence upon which the due process claim is based.