J-S24034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                :
:
:
GABRIEL PASTRANA          :
:
Appellant       :   No. 3056 EDA 2018

Appeal from the Judgment of Sentence May 17, 2018
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-0000720-2017

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED JUNE 12, 2019**

Appellant Gabriel Pastrana appeals from the judgment of sentence entered on May 17, 2018, in the Court of Common Pleas of Monroe County as made final by the denial of post-sentence motions on September 13, 2018.[1] We affirm.

The trial court aptly set forth the relevant facts and procedural history herein as follows:

[Appellant] was convicted by jury on February 8, 2018 of two criminal offenses and by the [c]ourt of several summary

---

[1] We note that Appellant purported to appeal the "Order and Opinion imposed in this matter on September 13, 2018," wherein the trial court denied his post-sentence motions. In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 (Pa.Super. 2001).  We have corrected the caption accordingly.

---

\*   Former Justice specially assigned to the Superior Court.

criminal offenses. [Appellant] was convicted by jury of Count III, 75 Pa.C.S. §3802(a)(1), Driving Under the Influence of Alcohol - General Impairment, Third Offense; and Count IV, 75 Pa. C.S. §3742.1(a). Accident Involving Death or Injury-Not Properly Licensed. Count I and II of the Criminal Information were withdrawn by the Commonwealth at trial. [Appellant] was found guilty by the [c]ourt of the following summary offenses: 75 Pa. C.S. §1543(b)(1), Driving With A Suspended License Pursuant to §3802/1547(b)(1); 75 Pa. C.S. §3323(b), Duties at Stop Sign; 75 Pa. C.S. §3361, Driving at Safe Speed; 75 Pa. C.S. §3714(a), Careless Driving; 75 Pa. C.S. §3736(a), Reckless Driving.

The facts of this case were testified to during trial. The underlying act involved a two-vehicle accident which occurred late on February 4, 2017 into early morning February 5, 2017. That time period coincided with Super Bowl Sunday. N.T., 2/8/18, p. 19. During half-time of the game, Thomas Cunningham drove his wife from their home in Monroe County to St. Luke's Hospital-Anderson Campus in Bethlehem Twp. to retrieve her vehicle. N.T., 2/8/18, p.21. On the return trip Mr. Cunningham was driving by himself along Old Route 115 in the area of Saylorsburg, Monroe County, PA. N.T. 2/8/18, p. 22. Old Route 115 and Hamilton South Road intersect in the vicinity of Saylorsburg with a stop sign facing drivers turning from Hamilton South onto Old Route 115. N. T 2/8/18, p.70. There is no stop sign on Old Route 115. N.T., 2/8/18, p.70. As Mr. Cunningham approached the intersection he observed a vehicle that did not appear to be slowing for the stop sign on Hamilton South. NJ., 2/8/18, p.22. Fearing the oncoming driver would run the stop sign and strike him, Mr. Cunningham sped up. N.T., 2/8/18, p. 22. Nevertheless, a collision occurred. Mr. Cunningham remained in his vehicle until assistance arrived and was later taken to the hospital with a broken rib and contusions to his knee, ankle, and lower leg. N.T., 2/8/18, p.30-31.

Meanwhile, the occupants of the other vehicle, [Appellant] and his 18 year-old brother, Elson Pastrana, exited their vehicle. [Appellant] and Elson Pastrana were returning from a Super Bowl Party at the home of friends of Elson Pastrana's girlfriend's parents. N.T., 2/8/18, p.42. The car they were in was owned by and registered to [Appellant]. N.T., 2/8/18, p. 156. [Appellant] estimated that he had consumed approximately six beers during the party and at least one shot of clear liquor. N.T., 2/8/18., p.159. An ambulance operated by EMT Joyce Schuster arrived on the scene prior to the arrival of Pennsylvania State Troopers Justin S. Magluilo and Kevin Kreidler. During the course of the troopers'

investigation, [Appellant] and his brother were separated. N.T., 2/8/18, p.118. By all accounts of the testimony offered at trial, [Appellant] was severely intoxicated at this point. Trooper Kreidler interviewed Elson Pastrana at the scene. N.T., 2/8/18, p. 118. Elson Pastrana initially stated he was operating the vehicle at the time of the accident, but upon further questioning by Trooper Kreidler, admitted [Appellant] had actually been operating the vehicle. N.T., 2/8/18, p.118. Elson Pastrana then also told Trooper Magluilo that he was the passenger and [Appellant] was the driver. N.T., 2/8/18, p.72. [Appellant] was requested to perform field sobriety tests which he refused. N.T., 2/8/18, p. 77. At that point, [Appellant] was arrested and placed in the back of Trooper Kreidler's car on suspicion of driving under the influence. Trooper Magluilo then gave Elson Pastrana a ride to his girlfriend's home. N.T 2/8/18, p.78.

[Appellant] was sentenced by the [c]ourt on May 17, 2018. As to Count III, [Appellant] was sentenced to a minimum of three months['] incarceration and maximum of twelve months plus fines and costs. As to Count IV, [Appellant] was sentenced to a minimum of three months['] incarceration and a maximum of six months plus fines and costs. These two sentences were ordered to run consecutively. As to the 75 Pa. C.S. §1543(b) violation, [Appellant] was sentenced to the statutorily required minimum sixty days['] incarceration to run concurrent to the sentences in Count III and IV. [Appellant] was ordered to pay fines and costs for the remainder of the summary offenses. [Appellant] filed timely Post-Sentence Motions on May 25, 2018. A hearing was held on [Appellant's] motions on June 25, 2018, at which time the Court heard argument from defense counsel and the Commonwealth.

Trial Court Opinion, filed 9/13/18, at 1-3.

On September 13, 2018, the trial court denied Appellant's post-sentence motions, and on October 12, 2018, Appellant filed his notice of appeal. On October 15, 2018, the trial court ordered Appellant to file a concise statement of the matters complained of on appeal, and Appellant complied on October 30, 2018. On that same date, the trial court filed its Statement Pursuant to Pa.R.A.P. 1925(a) wherein it stated it had adequately addressed

in its September 13, 2018, Opinion and Order the issues Appellant raised in his Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b).

In his appellate brief, Appellant presents the following questions for this Court's review:

> 1. Should a judgment of acquittal be granted because the jury verdict was against the weight of the evidence, which was insufficient to convict, and the verdict was based upon conjecture?
>
> 2. Should Appellant be granted a new trial because the Commonwealth presented two eyewitnesses at trial, one of whom was not identified in the discovery materials and the other, who was listed as an eyewitness, made a statement regarding the Appellant which was not included in the discovery materials?

Appellant's Brief at 4 (unnecessary capitalization omitted).[2]

In both his Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b) and his appellate brief, Appellant conflates challenges to the sufficiency and weight of the evidence in arguing that the sole witness who could identify Appellant as the driver of the vehicle was his brother, Elson Pastrana, who testified that he, not Appellant, was operating the vehicle at the time of the collision. However, this Court has stressed that challenges to the weight and sufficiency of the evidence are distinct. ***Commonwealth v. Richard***, 150 A.3d 504, 517–18 (Pa.Super. 2016). As we have explained,

> [a] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient

---

[2] The Commonwealth has not filed an appellate brief.

evidence of each element of the crime, "but questions which evidence is to be believed." ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa.Super. 2006), appeal denied, 590 Pa. 655, 911 A.2d 933 (2006). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Commonwealth v. Clay***, 619 Pa. 423, 64 A.3d 1049, 1055 (2013). "Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Id.*** (citation omitted). "It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Id.***

***Richard***, ***supra***, at 516–17. In addition, in reviewing a challenge to the weight of the evidence, this Court has stated:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. ***Commonwealth v. Champney***, 574 Pa. 435, 832 A.2d 403, 408 (2003).

***Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa.Super. 2013), *appeal denied*, 622 Pa. 755, 80 A.3d 774 (2013).

Herein, Appellant challenged the weight of the evidence to support his convictions in a timely post-sentence motion which the trial court denied; therefore, he properly raised this challenge before the trial court. ***See*** Pa.R.Crim.P. 607(A)(1)-(3) (claim the verdict was against the weight of the

evidence shall be raised before or after sentencing). Notwithstanding, although he claims the "verdict was against the weight of the evidence" he provides no legal argument or support to develop this claim, for in his concise statement and the first question presented in his appellate brief, he further states that evidence was "insufficient to convict." Also, in the first sentence of the argument portion of his brief, Appellant states his "first claim is a challenge to the sufficiency of the evidence[,]" and he cites to caselaw pertaining only the sufficiency of the evidence thereafter. *See* Brief for Appellant at 13-16. In addition, the trial court viewed Appellant's challenge as to the sufficiency of the evidence. *See* Trial Court Opinion, filed 9/13/18, at 4. As such, Appellant has waived a challenge to the weight of the evidence on appeal due to his failure to develop it fully in his brief. *See* ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa.Super. 2007), *appeal denied*, 603 Pa. 679, 982 A.2d 509 (2017) (noting failure to develop adequately an argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119).

Even if Appellant had developed a proper challenge to the weight of the evidence, such a claim provides him no basis for relief. When, as herein, the challenge to the weight of the evidence is predicated on the credibility of trial testimony, this Court's review of the trial court's decision is extremely limited. ***Commonwealth v. Gibbs***, 981 A.2d 274, 282 (Pa.Super. 2009), *appeal denied*, 607 Pa. 690, 3 A.3d 670 (2010). "On issues of credibility and weight

of the evidence, an appellate court defers to the findings of the trial [court], who has had the opportunity to observe the proceedings and demeanor of the witnesses." **Commonwealth v. Cunningham**, 805 A.2d 566, 572 (Pa.Super. 2002) (citations omitted), *appeal denied*, 573 Pa. 663, 820 A.2d 703 (2013). Thus, generally, unless the evidence is so unreliable or contradictory as to make any verdict based thereon pure conjecture, these types of claims will be rejected on appellate review. **Commonwealth v. Trippett**, 932 A.2d 188, 198 (Pa.Super. 2007).

The trial court opined on the credibility of the witnesses as follows:

> Upon careful review of the trial transcript and exhibits produced in this case we find that the Commonwealth provided sufficient evidence that [Appellant] was operating his vehicle on the night of the accident. [Appellant] is correct that no eyewitness was able to definitively testify that he was driving. However, the Commonwealth may establish its case through circumstantial evidence. Com. v. Wilson, 225 Pa. Super. 513, 312 A.2d 430, 432 (1973). "Our jurisprudence does not require fact-finders to suspend their powers of logical reasoning or common sense in the absence of direct evidence." Com. v. Teems, 2013 PA Super 147, 74 A.3d 142, 148 (2013).
>
> Both [Appellant] and Elson Pastrana claimed at trial that [Appellant] had not been driving. Elson Pastrana stated that he had told one of the troopers that he was the designated driver, but that the trooper "got up in [his] face and [the trooper] was questioning [him.]." N.T., 9/8/18, p.45. Elson Pastrana further testified that he felt disorientated and threatened and finally just agreed with the trooper in implicating his brother so that he could leave and go home. N.T., 9/8/18, p.45. However, Trooper Kreidler denied threatening Elson Pastrana. N.T., 9/8/18, p.135. Trooper Kreidler explained that he did not believe Elson Pastrana's explanation because in his experience the crash scene did not lend itself to have been caused by a sober driver, and that it was not unusual for him to further question someone who did not appear truthful at the scene of an accident. N.T., 9/8/18, p.1 18, 137 Trooper Kreidler also stated that while questioning Elson Pastrana,

he would not meet his eyes and was answering very quietly. N.T 9/8/18, p.118.

This information alone could cast sufficient doubt on the validity of Elson Pastrana's testimony at trial for the jury to have disregarded it. By Elson Pastrana's own admission, he gave two conflicting statements to the troopers who responded to the accident. The [c]ourt's charge advised the jury to consider whether testimony was "uncertain or confused, self-contradictory or evasive." N.T., 9/8/18, p.204. Further, the jury was told to consider whether a witness had any motive that may have affected [his or her] testimony. N.T., 9/8/18, p.204. As the Commonwealth pointed out, Elson Pastrana had a very real interest in protecting his brother from conviction and possible imprisonment, casting his testimony into doubt. As already stated, "[t]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Com. v. Johnson at 262-263 (emphasis added). This was also an instruction given to the jury.

The validity of Elson Pastrana's testimony was further called into doubt by Trooper Magluilo's testimony. Trooper Magluilo testified that during all of his interactions with the witness, Elson Pastrana stated that he had been the passenger in [Appellant's] vehicle and [Appellant] was driving. N.I 2/9/18, p.72. Also, upon questioning by the Commonwealth, Elson Pastrana denied making any statements about Defendant to Trooper Magluilo while being transported to his girlfriend's home. N.T., 2/8/18, 47-48. However, Trooper Magluilo stated that during the ride, Elson Pastrana had a "disappointed look on his face" and repeatedly mentioned that he did not understand why [Appellant] kept "doing things like this" and making mistakes. N.T., 2/9/18, p.79. Again, this testimony could clearly call into question Elson Pastrana's statements made at trial and lead the jury to disbelieve him. The jury was free to accept the testimony of Elson Pastrana at trial, or the troopers' testimony at trial, or some or none. The jury chose to believe the troopers' testimony in finding [Appellant] guilty.

In addition to the testimony of Elson Pastrana and the troopers, the Commonwealth presented two other witnesses that reported odd behavior between [Appellant] and Elson Pastrana at the accident scene. Mr. Cunningham reported that after the accident, while still in his vehicle, [Appellant] approached his vehicle and began demanding to know how much Mr. Cunningham had been drinking. N.T., 2/8/18, p.31-32. As the Commonwealth suggested during its closing, and the jury could have inferred, this

was odd behavior from someone who had just been in an accident. It is possible that with the sum of all of the evidence before it, the jury believed that [Appellant] asked Mr. Cunningham this question in hopes that the victim had also been drinking and would not report the accident to the police. Finally, the responding EMT, Ms. Schuster, testified to her unusual observations of the [Appellant]. The [Appellant] physically pushed her towards Mr. Cunningham's vehicle, was slurring his speech, and acted in a belligerent manner. N.T., 2/8/18, p.104. While she was administering to Mr. Cunningham, Ms. Schuster heard [Appellant] say to Elson Pastrana "tell them you were driving. You were driving, right? Just tell them that you were driving." NJ., 2/8/18, p.107. All of this evidence certainly could have convinced the jury [Appellant] was the driver, and that he was under the influence of alcohol. The testimony conflicted in part with [Appellant's] testimony and Elson Pastrana's testimony, but does not mean the jury had to find it less convincing.

In response to the evidence provided by the Commonwealth, [Appellant] chose to testify on his own behalf during trial. [Appellant] adamantly denied driving his vehicle the night of the accident and stated his brother had always been the planned designated driver. N.T., 2/8/18, p.150. [Appellant] stated that he was using the GPS on his phone to guide his brother and that the accident occurred when they were both looking at the phone. N.T., 2/8/18, p.151-152. However, considering all of the testimony as a whole, we do not find it unreasonable that the jury disbelieved [Appellant's] testimony. First of all, it is undisputed that [Appellant] was severely intoxicated at the time of the accident. Ms. Schuster, Mr. Cunningham and both troopers reported [Appellant] showed signs of intoxication. On cross-examination, [Appellant] admitted that when he approached Mr. Cunningham he was still under the effects of alcohol. N.T., 2/8/18, p. 163. Additionally, the jury viewed an MVR from Trooper Magluilo's vehicle. In the video [Appellant] is seen speaking to the trooper in a belligerent manner and visibly wavering back and forth while leaning against the trooper's vehicle, unable to keep himself upright. Commonwealth's Exhibit "5," 17:50-18:12. This level of intoxication could easily have caused the jury to doubt [Appellant's] recollection of the events, especially in light of the testimony of the other witnesses. The jury could also have chosen to disbelieve [Appellant] and Elson Pastrana in part or in full. A "witness's credibility is solely for the jury to determine." Com. v. Simmons, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995). Viewing this testimony in the light most favorable to the verdict winner, it

could clearly be inferred that there was sufficient evidence [Appellant] had been driving and attempted to persuade his brother to lie to the police. Therefore, we find that the Commonwealth provided sufficient evidence at trial to sustain the verdict.

Trial Court Opinion, filed 9/13/18, at 5-9.

After a careful review of the certified record, we would ascertain no abuse of discretion by the trial court.

To the extent Appellant attempts to develop a challenge the sufficiency of the evidence, we note that:

In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. ***Commonwealth v. Stiles***, 143 A.3d 968, 982 (Pa.Super. 2016) (internal quotation marks omitted).

***Commonwealth v. Richard***, 150 A.3d 504, 517–18 (Pa.Super. 2016).

Herein, Appellant was convicted of multiple offenses each of which contains numerous elements, yet his Rule 1925(b) statement does not identify with specificity the elements of any crime or identify those which he alleges the Commonwealth has failed to prove.  On this basis alone, we could find this issue waived.  ***See Richard***, ***supra***.

Notwithstanding, even if Appellant had presented an adequate Rule 1925(b) statement, we would find no merit to this claim.  While Appellant did not specify the allegedly unproven element or elements of his convictions in

his Rule 1925(b) statement, his sufficiency challenge developed in his appellate brief stems from his position that he was not driving the vehicle, as proven by his brother's testimony. As stated previously, such a challenge goes to the weight, not the sufficiency of the evidence. *See Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa.Super. 2014), *appeal denied*, 635 Pa. 742, 134 A.3d 56 (2016) (stating a claim that the Commonwealth's evidence was incredible goes to the weight, not the sufficiency, of the evidence).

Appellant next argues he should be granted a new trial because, over objection, the Commonwealth presented the testimony of Joyce Schuster who had not been identified in the discovery materials and Thomas Cunningham who was listed as an eyewitness but made a statement at trial regarding Appellant that had not been included in the discovery materials. Appellant first maintains that Mr. Cunningham was permitted to "amplify" at trial the information he had provided to the police to include a statement that Appellant approached the window of his vehicle as asked Mr. Cunningham how much he had been drinking. Appellant stresses the Commonwealth did not supplement the discovery prior to trial, although the prosecutor indicated that he learned of this information, which Mr. Cunningham stated he had not told police, late the previous evening. Brief for Appellant at 17-18.

Appellant next maintains the Commonwealth's failure to disclose the existence of Joyce Schuster, whose testimony "is tantamount to a confession from the Appellant, [as] it corroborates the Commonwealth's theory of the

case with words directly from the mouth of the Appellant" was "extremely prejudicial" to him. *Id*. at 18-20. Specifically, Appellant avers "[t]he testimony offered by Ms. Schuster was extremely prejudicial to [] Appellant because she not only claimed that he was drunk and disorderly, even pushing her, but also that he was attempting to convince Elson Pastrana to tell the police that he was driving." *Id*. at 19. Appellant argues that the Commonwealth was under a continuing duty to disclose this additional evidence, which was discovered on the eve and morning of trial, and its failure to do so deprived him of an opportunity to reconsider his trial strategy and entitles him to a new trial. *Id*. at 21-23.

This Court will reverse a trial court's decision regarding the admissibility of evidence only when the appellant sustains the heavy burden of establishing that the trial court has abused its discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. **Commonwealth v. Frein**, 2019 WL 1866731, at *14 (Pa. Apr. 26, 2019) (citation and quotation marks omitted).

Appellant's first argument pertains to the following exchange between the prosecutor and Mr. Cunningham:

> [The Prosecutor] Okay. Now, after this collision occurred, you stated you weren't able to get out of your car. But did you have any contact or see anybody come up to your car?

- 12 -

[Mr. Cunningham]: Very shortly after the impact, someone came up to my window and was yelling into the car, How much you been drinking? How much you been drinking?

[The Prosecutor] Okay. And how did that strike you?

[Mr. Cunningham]: I said, What? Why is somebody asking me this?

[The Prosecutor]: And was there any other conversation with that person?

[Mr. Cunningham]: They continued to ask me, How much you been drinking? I said, I haven't drank anything. Who the hell are you? Get away from me. It was really odd.

[The Prosecutor: And who was—

[Defense Counsel]: Your Honor, may we approach?

THE COURT: Yes.

(Whereupon, the following took place outside the hearing of the jury.)

[Defense Counsel]: I don't have anything in discovery or in a police report regarding this. Nothing at all regarding any statements made by this person.

THE COURT: Uh-huh.

[Defense Counsel]: So—

[The Prosecutor]: That's accurate. The witness told me--I talked to him late yesterday. He told me he didn't tell the police this. He didn't view it as important to the accident itself.

THE COURT: All right. Well, I'll allow it.

[Defense Counsel]: It wasn't in the report.

THE COURT: You can cross-examine him on that. . . .

N.T. Trial 2/8/18, at 31-33. At no point thereafter did defense counsel ask for a recess or continuance, nor did he otherwise express a view that the Commonwealth had committed a discovery violation. To the contrary, he did not respond at all when the trial court indicated Mr. Cunningham would be subject to cross-examination on Appellant's alleged statement to him. *Id*. at 33. Instead, counsel cross-examined Mr. Cunningham regarding his failure to tell police previously that someone from the other vehicle had spoken to him at the scene, at which time the latter indicated he could not recall being questioned by any officer at that time. *Id*. at 37-39.

Initially, we note that the basis of Appellant's objection at trial that Mr. Cunningham's aforementioned testimony was outside the scope of the police report is not the same as the prosecutorial misconduct argument he advances in his appellate brief. It is axiomatic that in order to preserve a claim for appeal, a party must make a timely and specific objection at trial. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Commonwealth v Pearson**, 685 A.2d 551, 555 (Pa.Super. 1996), *appeal denied*, 549 Pa. 699, 700 A.2d 439 (1997) "[A]n appellant may not raise a new theory for an objection made at trial on his appeal[;]" *see also Commonwealth v. McGriff*, 160 A.3d 863, 866, *reargument denied* (June 20, 2017), *appeal denied*, 644 Pa. 372, 176 A.3d 853 (2017) (to preserve an issue for review, a party must make a timely and

specific objection at trial, for this Court will not consider claim on appeal not called to trial court's attention at a time purported error could have been corrected). Even constitutional claims are waived if they are not raised before the trial court. **Commonwealth v. Kennedy**, 598 Pa. 621, 959 A.2d 916, 922 (2008) *cert. denied*, 556 U.S. 1258, 129 S.Ct. 2433, 174 L.Ed.2d 229 (2009) (finding Sixth Amendment issue waived where defendant failed to raise objection on this basis at trial). The penalty of waiver is the result for failing to object, even in capital appeals. **Commonwealth v. Ballard**, 622 Pa. 177, 80 A.3d 380, 406 (2013), *cert. denied*, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014). As such, we find this claim waived.

Notwithstanding the foregoing, on cross-examination, Mr. Cunningham explained that while he may have been asked "one or two questions" by police, he did not have extensive discussions with them, and he could not remember the details of the conversations he might have had with the officers. N.T. at 38. He did specifically state that he "did not have any conversations with police regarding someone speaking with [him]." **Id**. He indicated that he did not reveal this information to the ADA until a "couple days ago." This testimony explains why such information was not in any police report and evinces that Mr. Cunningham did not reveal it until the eve of trial; therefore, as the trial court determined, the Commonwealth did not fail to provide evidence or written discoverable statements within its possession or

knowledge, because there was no written or recorded statement pertaining to Mr. Cunningham's conversation with Appellant to obtain.

Moreover, as one who was present at the scene of the accident, Mr. Cunningham hardly can be deemed a surprise witness, and it is not unforeseen that he may have observed more than the brief details noted in the police report. Appellant subjected Troopers Magluilo and Kreidler as well as Mr. Cunningham to a thorough cross-examination in this regard, and the jury was free to make credibility determinations following that testimony. Finding no error in the trial court's evidentiary rulings in this regard, no relief is due.

Appellant next contends the Commonwealth had a continuing duty to disclose Joyce Schuster's anticipated testimony. Prior to her testifying at trial, defense counsel requested an offer of proof. N.T. Trial, 2/8/18, at 97. The Commonwealth responded by explaining that Ms. Schuster was an EMT who responded to the scene of the accident and witnessed Appellant tell his brother to indicate that he had been driving. She would express her belief that Appellant had been intoxicated and describe his behavior as "belligerent." *Id*. at 97-98. In response, the following exchange occurred:

> [Defense Counsel]: Yeah. I'm just going to make an objection based upon the fact that none of this was in the discovery. Nothing with Ms. Schuster, no statements, no mention of her person. I don't think she's even mentioned as an individual who was present.
> [The Prosecutor]: It is not in the police reports. We—I discovered it this morning in speaking with Trooper Magluilo who is not the affiant. He is right, Trooper – I'm sorry, [defense counsel]. It was not in reports, but he did mention her presence at the scene.

And actually, interestingly, Judge, as the [c]ourt will hear when the MVR is played later, this is what drew my attention to it. I listened to the MVR previously and was focused more on the field sobriety test portion. But as I listened to other portions of the MVR last evening, I heard Trooper Magluilo making a reference to hearing from someone, meaning Trooper Magluilo hearing from someone that the brother had been witnessed putting pressure on the other brother. In other words, [Appellant] had been witnessed putting pressure on the other brother.

So that led to my curiosity because as I heard Trooper Magluilo say it on the MVR last evening. I questioned Trooper Magluilo about it this morning. He then referenced that he believed it was this particular person. He then reached out to her and arranged for her to come and testify this morning. So I literally knew nothing about who she was or any specifics until this morning when we reached out to have her here.

THE COURT: The objection is noted. It's overruled I'll allow her to testify.

[The Prosecutor]: Thank you, Your Honor.

*Id.* at 98-99. Defense counsel made no further objection, and direct examination of Ms. Schuster immediately ensued.

Once again, Appellant did not ask for a recess, continuance or mistrial in light of Ms. Schuster's proposed testimony, nor did he otherwise express a view that the Commonwealth had committed a discovery violation or violated the dictates of ***Brady v. Maryland***, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). In light of this failure, Appellant's arguments pertaining to Ms. Schuster's subsequent testimony are waived. ***See Pearson***, ***supra***.

However, Appellant is entitled to no relief on the merits. As the Pennsylvania Supreme Court has explained:

Under ***Brady*** and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. ***See, e.g., Commonwealth v.***

- 17 -

*Hutchinson,* 611 Pa. 280, 25 A.3d 277, 310 (2011). To establish a *Brady* violation, an appellant must prove three elements:
> (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

*Hutchinson, supra* (citation omitted).

The burden rests with the appellant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." *Id.* (citation omitted). The evidence at issue must have been "material evidence that deprived the defendant of a fair trial." *Id.* (citation and emphasis omitted). "Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Paddy,* 609 Pa. 272, 15 A.3d 431, 450 (2011) (quoting *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

*Brady* does not require the disclosure of information "that is not exculpatory but might merely form the groundwork for possible arguments or defenses," nor does *Brady* require the prosecution to disclose "every fruitless lead" considered during a criminal investigation. *Id.* (citation omitted). The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty **does** extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. *Commonwealth v. Puksar,* 597 Pa. 240, 951 A.2d 267, 283 (2008); *Commonwealth v. Lesko,* 609 Pa. 128, 15 A.3d 345, 370 (2011) (applying *Kyles, supra* at 438, 115 S.Ct. 1555). *Brady* is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources. *Commonwealth v. Smith,* 609 Pa. 605, 17 A.3d 873, 902–03 (2011); *Paddy*, *supra* at 451.

*Brady* sets forth a limited duty, not a general rule of discovery for criminal cases. *Paddy, supra* at 451 (citing *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) for the proposition that "there is no generalized constitutional right to discovery in a criminal case, and *Brady* did not create one").

***Commonwealth v. Roney***, 622 Pa. 1, 22–28, 79 A.3d 595, 607–08 (2013),

*cert. denied*, 135 S.Ct. 56, 190 L.Ed.2d 56, 83 USLW 3185 (2014).

While he acknowledges that the Commonwealth was not aware of Ms.

Schuster until the morning of trial, Appellant asserts that under ***Brady*** and

Pa.R.C.P. 573(G)[3] it remained obligated to disclose her name.   Appellant's

---

[3] The rule in question requires the following disclosure by the Commonwealth:

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
     (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;
     (b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;
     (c) the defendant's prior criminal record;
     (d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;
     (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;
     (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and
     (g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

Pa.R.Crim.P. 573.

- 19 -

argument focuses primarily upon Ms. Schuster's testimony, and he claims that "[h]ad it been disclosed, and her impeachment been planned, the result of the case could have been different." Brief for Appellant at 22. In doing so, Appellant highlights the following statements:

> [Ms. Schuster]: As I was leaning in the [Cunningham] car, [ ] Appellant was leaning in over, as I'm trying to talk, [Appellant was] still yelling. At that point I just kind of blocked it out because I was trying to talk to him. . . .
>
> [The Prosecutor]: Through the course of this event, were you able to hear any other conversations [Appellant] had with the person you later found out was his brother?
>
> [Ms. Schuster]: Yes, I did. When we pulled up on scene and I asked if they were okay, one of my questions on every accident scene was, Who is driving? And the other brother just stood there like a deer in headlights. He just had this look on his face like he didn't know how to respond. And as I was walking up, I had heard [Appellant] say to the brother, Tell them you were driving. You were driving, right? Just tell them that you were driving.

Brief for Appellant at 19 (citations to reproduced record omitted) citing N.T. Trial 2/8/18, at 105-06; 107.

Appellant has not carried his burden to establish that the Commonwealth withheld any evidence concerning Ms. Schuster which was favorable to his defense. First, as the trial court states, *see infra*, her testimony cannot be viewed as clearly exculpatory. *See* Trial Court Opinion, filed 9/13/18, at 9. Also, Appellant's arguments ignore the fact that the Commonwealth clearly indicated Ms. Schuster's name did not appear on any of the discovery in its possession, and it was the prosecutor's repeat viewing of the MVR which led him to inquire about her. Appellant was free to view the

MVR prior to trial and make the same inquiries which led the Commonwealth to Ms. Schuster, whom the prosecutor met on the same day her identity was revealed to Appellant.

In addition, the trial court made additional findings in this regard:

> [W]e do not find that Ms. Schuster's testimony was either exculpatory or tantamount to a confession.

> ***

> Based upon Ms. Schuster's testimony, the jury could have taken the words of [Appellant] to mean he had been driving and was trying to convince Elson Pastrana to take the blame, or that he had not been driving and was urging his brother to tell the truth. The statement was up to the jury to interpret a meaning. Furthermore, the statement did not appear to be one that the Commonwealth was aware of prior to trial, and therefore, not a statement in the possession or control of the attorney for the Commonwealth.

> ***

> [Appellant] could have investigated the matter and learned of Ms. Schuster's observations prior to trial. She was not a protected witness and she was an uninvolved third party to the accident. Even if her name was not in the accident report, it was noted that an ambulance responded to the scene, and that information could have been further investigated. Finally, the information was not so prejudicial that relief was necessary. The statement as given could be interpreted for or against [Appellant] as the driver. The issue of intoxication was not in question, considering all other evidence, so that portion of the testimony was not prejudicial either. Therefore, we find no error in allowing Ms. Schuster's testimony under the circumstances.

Trial Court Opinion, filed 9/13/18, at 13-14.

In sum, Appellant's claims of a ***Brady*** violation have been waived, but even if we were to review these claim on the merits, as did the trial court, we would find they fail. Appellant is entitled to no relief on his second issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/19