J-A26045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS ALEXANDER | : | |
| | : | |
| Appellant | : | No. 1309 EDA 2020 |

Appeal from the PCRA Order Entered June 30, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005336-2013

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED OCTOBER 09, 2020**

Appellant, Louis Alexander, appeals from the June 30, 2020, order entered in the Court of Common Pleas of Philadelphia County, which dismissed Appellant's first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without an evidentiary hearing.  After a careful review, we affirm.

The relevant facts and procedural history are as follows:  Appellant was arrested on October 17, 2012, and charged with various offenses, including first-degree murder, in the death of Daquan Windley.  Represented by counsel, Appellant proceeded to a jury trial on August 10, 2015.  This Court has previously summarized the evidence from Appellant's jury trial as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

On May 4, 2012, Daquan Windley was standing outside of a bar at 15th and Huntingdon Streets in Philadelphia. Mr. Windley walked across the street to the trunk of a vehicle where a couple of people had gathered. [Appellant] came across the street and shot Windley several times. Windley ran down the street and [Appellant] chased him and shot him two more times. Daquan Windley collapsed on a porch. The police responded, and upon finding Windley[,] they scoop[ed] him up and t[ook] him to Temple Hospital. Fourteen days later Windley succumbed to his wounds and died. Although a complaint was filed on June 13, 2012, [Appellant] was not apprehended until October 17, 2012[.]

***

There were numerous surveillance cameras in, as well as outside the bar at 15th and Huntingdon Streets. The jury was able to see [Appellant] as well as the decedent in the bar and when each of them left the bar. Windley stands outside of the bar and [Appellant] goes to the corner where a car pulls up and hands [Appellant] an object which is not discernable in the video. [Appellant] then crosses the street to where the decedent was standing with a few other people and shoots Windley several times. [Appellant] continues to shoot the decedent as he runs up the street. (N.T. 8/17/2015, pp. 8-13).

In addition to the tape-recording of the murder, the parties stipulated that the individual in the video wearing the tan hooded jacket and blue jeans was [Appellant]. This is the individual [who] is shown inside and outside of the bar, crossing the street and approaching the decedent immediately prior to the gunshots, and running after the decedent with his arm extended while hearing more shots. (N.T. 8/11/2015, pp. 18, 79-80, 83-88; N.T. 8/12/2015, p. 2). The medical examiner testified as to the cause of death and that the wounds received by the decedent were consistent with the video. (N.T. 8/11/2015, pp. 83-88). Tyreeke Smith was at the scene of the murder shooting dice, and although when he testified he claimed not to recall what happened that evening, his statement on the morning following the murder declares that he saw "Louie" go up to the decedent and shoot [him], then run back, past Smith with a gun in his hand. (N.T. 8/12/2015, pp. 18-20, 23-24). Reginald Green also testified that he was outside of the bar at the time of the shooting, and although he did not see the shooting, he did see [Appellant] running away after the crime. (N.T. 8/12/2015, pp. 106-109). Detective Marano told the jury about interviewing Tyreeke Smith following the incident and how that eyewitness had stated he had seen the

entire incident including [Appellant] walking up to the decedent and firing four or five shots and then as Windley runs away, [Appellant] chasing after him and firing three or four more shots. (N.T. 8/12/2015, pp. 121-123).

***Commonwealth v. Alexander***, No. 1404 EDA 2016, at 2, 5 (Pa.Super. filed 7/10/17) (unpublished memorandum) (citation omitted).

At the conclusion of trial, the jury convicted Appellant of first-degree murder, carrying a firearm without a license, and possessing an instrument of crime. On December 18, 2015, the trial court sentenced Appellant to an aggregate of life in prison, and Appellant filed a timely, counseled motion for reconsideration of his sentence. The motion was denied by operation of law.

Appellant filed a timely direct appeal, and this Court affirmed Appellant's judgment of sentence on July 10, 2017.[1] Appellant filed a petition for allowance of appeal, which our Supreme Court denied on December 5, 2017.

On September 26, 2018, Appellant filed a timely, counseled PCRA petition, and on December 29, 2019, the Commonwealth filed a motion to dismiss, to which PCRA counsel filed a response. On March 2, 2020, the PCRA court provided Appellant with notice of its intent to dismiss the PCRA petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907.

---

[1] On appeal, Appellant contended the evidence was insufficient to sustain his convictions, and the jury's verdict was against the weight of the evidence. We found no merit to either claim.

On June 30, 2020, the PCRA court dismissed Appellant's PCRA petition, and this timely, counseled appeal followed on July 7, 2020. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Presented" (verbatim):

1. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective in failing to object to the trial court's failure to repudiate its error in instructing the jury that "if the Commonwealth's evidence does not prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty," in violation of the Sixth and Fourteenth Amendments to the United States Constitution?

2. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective in failing to object to a litany of comments by the trial prosecutor improperly referring to facts not in evidence and vouching for the credibility of his witnesses and the integrity of the case, in violation of the Sixth and Fourteenth Amendments to the United States Constitution?

Appellant's Brief at 3 (suggested answers omitted).

Initially, as a general proposition, we note "[o]ur standard of review of the denial of PCRA relief is clear; we are limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Wojtaszek*, 951 A.2d 1169, 1170 (Pa.Super. 2008) (quotation marks and quotation omitted).

Further, inasmuch as Appellant's claims present allegations of ineffective assistance of his trial counsel, we apply the following well-established legal principles:

- 4 -

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S.[A.] § 9543(a)(2)(i).

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa.Super. 2016)

(quotation marks, quotations, and citations omitted).

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. [C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1272 (2016)

(citations omitted). *See Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d

409, 419 (2009) ("A failure to satisfy any prong of the ineffectiveness test

requires rejection of the claim of ineffectiveness.").

Further,

To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294, 311-12 (2014) (citations, quotation marks, and quotations omitted).

In his first claim, Appellant contends trial counsel was ineffective in failing to object properly to an erroneous jury instruction regarding the Commonwealth's burden of proving guilt, as well as to the supplemental instruction given by the trial court.

During its charge to the jury, it is undisputed that the trial court initially misread a sentence in the instruction pertaining to the Commonwealth's burden of proving Appellant's guilt beyond a reasonable doubt. Relevantly, the trial court stated the following:

> Now a fundamental principle of our system of criminal law is that a Defendant is presumed to be innocent. The mere fact that a Defendant is arrested and is accused of a crime is not any evidence against him. Furthermore, a Defendant is presumed innocent throughout the trial and unless and until you conclude, based on a careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt.
>
> It is not a Defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the Defendant is guilty of that crime beyond a reasonable doubt. The person accused of a crime is not required to present evidence or to prove anything in his own defense.
>
> If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty; **on the other hand, if the Commonwealth's evidence does not prove beyond a reasonable doubt that the Defendant is guilty, then your verdict should be guilty.**
>
> Although the Commonwealth has the burden of proving that the Defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt and to a

mathematical certainty nor must it demonstrate the complete impossibility of innocence.

\*\*\*

So to summarize: You may not find the Defendant guilty based on a mere suspicion of guilt. The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt. If it meets that burden, then the Defendant is no longer presumed innocent and you should find him guilty; on the other hand, if the Commonwealth does not meet its burden, then you **must find him not guilty.**

N.T., 8/17/15, at 152-53 (bold added).

In response to the bolded sentence, trial counsel objected at the conclusion of the trial court's instruction as follows:

**[TRIAL COUNSEL]:** Judge,…when you started talking about the weight of the evidence, et cetera, et cetera, I honestly think you got it backward. I think you said if they are not convinced beyond a reasonable doubt and the DA didn't prove it, then the verdict must be guilty. I actually think you said that. I think you got it backward.

**[ADA]:** Is it more productive to highlight it?

**THE COURT:** If they are not convinced beyond a reasonable doubt, then they must find the Defendant not guilty.

**[TRIAL COUNSEL]:** All right.

**THE COURT:** If they are convinced beyond a reasonable doubt, then they should find him guilty.

**[TRIAL COUNSEL]:** That's fine.

**THE COURT:** I will do that.

*Id.* at 179-80 (bold in original).

The trial court then gave the following supplemental instruction to the jury:

**THE COURT:** Ladies and gentlemen, I want to reiterate. If the Commonwealth has not proven each and every element of the

crimes charged beyond a reasonable doubt, you must find the Defendant not guilty. If, on the other hand, the Commonwealth has proved each and every element beyond a reasonable doubt, then you should find the Defendant guilty.

*Id.* at 180-81 (bold in original).

Appellant contends the trial court's supplemental jury instruction did not "cure" the error contained in the initial instruction. In this vein, Appellant contends the trial court caused confusion by indicating it was "reiterating" the Commonwealth's burden when, in fact, the trial court should have "repudiated" the initial erroneous instruction regarding the Commonwealth's burden. Accordingly, Appellant avers trial counsel was ineffective in failing to request that the trial court specifically repudiate its initial misstated instruction and/or in failing to object to the trial court's supplemental instruction. We conclude Appellant is not entitled to relief on this claim.

> The scope of appellate review of a jury charge for reversible and prejudicial error requires that the charge be evaluated and considered as a whole. The general effect of the jury charge controls because error will not be predicated upon isolated excerpts from the charge. Further, a trial court's deviation from the express language of the statutory instruction or a technical inaccuracy in the jury instruction which nevertheless adequately, accurately, and clearly expresses the law to the jury will not mandate reversal.

*Commonwealth v. Trill*, 543 A.2d 1106, 1114 (Pa.Super. 1988) (citations omitted).

Here, there is no dispute the trial court erroneously added the word "not" to a sentence in the excerpt of the instruction bolded *supra*. Furthermore, there is no dispute trial counsel properly brought the

- 8 -

misstatement to the trial court's attention and ensured the trial court emphasized the proper burden of proof in a supplemental instruction.

Viewing the charge as a whole, and considering the trial court repeated the instruction on the Commonwealth's burden of proof correctly to the jury numerous other times throughout the charge, we find no prejudicial error. *See Trill*, 543 A.2d at 1114 ("It would be fatuous to require a trial judge to perform…a lengthy charge flawlessly on each attempt."). Moreover, the trial court had broad discretion in phrasing the supplemental instruction, so long as the law was clearly, adequately, and accurately presented to the jury. *Commonwealth v. Gibson*, 553 Pa. 648, 720 A.2d 473 (1998). We conclude such occurred in this case, and therefore, Appellant is not entitled to relief on his claim of ineffective assistance of trial counsel.

In his next claim, Appellant contends trial counsel was ineffective in failing to object to various instances of prosecutorial misconduct that occurred during the prosecutor's opening and closing statements.

> Before elaborating on the specifics of Appellant's claim, we recognize that a claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, [n]ot every intemperate or improper remark mandates the granting of a new trial;…[r]eversible error occurs only when the unavoidable effect

of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 144 (2012) (citations, quotation marks, and quotations omitted).

Further, it is well-settled that a prosecutor has reasonable latitude during his opening and closing arguments to advocate his case, comment on the evidence and appropriate inferences to be drawn therefrom, respond to arguments of opposing counsel, and fairly present the Commonwealth's version of the evidence to the jury with oratorical flair. *See Commonwealth v. Hanible*, 612 Pa. 183, 30 A.3d 426, 465 (2011); *Commonwealth v. Kennedy*, 598 Pa. 621, 959 A.2d 916 (2008). Moreover, the court must evaluate a prosecutor's challenged statement in the context in which it was made. *See Hanible*, *supra*.

In an effort to demonstrate the arguable merit of the ineffectiveness claim as it relates to trial counsel's failure to object to alleged prosecutorial misconduct that occurred during opening statements, Appellant initially points to the following excerpts from the prosecutor's opening statement:

> Let me go back to what I just said. This is not a murder mystery. It is not a whodunit. You will watch him at that bar for approximately fifty minutes before the murder, wearing his tan hooded jacket and blue jeans and you are actually going to view the individual, this Defendant, shoot and kill another human being on tape and his friends, you will see on the video too, because when homicide detectives did their investigation and realized that the tape was there, it allowed them to identify the killer but, more importantly, **his friends who were there**, **who saw it and we**

**brought them to Homicide and outside of his presence when the Defendant, their friend, wasn't there, they told us who did it and they told us what happened and they gave us statements**. They signed the statements, reviewed them and said Louis did it[.]

\*\*\*

I ask that you use your common sense. Each one of you has a lifetime of experience to draw from. Each one of you comes from somewhere different. That body of knowledge that you accumulate during the course of your life is your common sense. Don't check it at that door just because this is a formal courtroom and you are not used to sitting as jurors **because when we bring these witnesses into this courtroom, his friends, his people, and we force them reluctantly to sit in this chair and talk about a murder, what do you think they are going to do? What would you expect them to do? Maybe a sudden case of amnesia. I don't remember. I don't know what you are talking about. I wasn't there. I never said that to detectives. I don't know him but your common sense, as you watch these witnesses sit here and you learn of their allegiances to this Defendant, will tell you everything you need to know when you evaluate their credibility and how they behave in court because they aren't my friends. These are his. (Indicating).**

N.T., 8/11/15, at 42-43, 44-5 (bold added).

Appellant contends the statements bolded in the first paragraph of the excerpt above constituted prosecutorial misconduct since the prosecutor improperly assured "the jury that the police and [the prosecutor] were on the same side[,]" thus improperly vouching for the credibility of the police, who investigated the murder. Moreover, Appellant contends bolded portions in both paragraphs pertaining to the prosecutor's characterization of the eyewitnesses as Appellant's "friends" was not supported by the evidence, and therefore, the prosecutor committed misconduct in making these statements.

In rejecting Appellant's claim, the PCRA court relevantly indicated:

[Appellant] alleges that this was a blatant attempt to align the prosecutor's office with the investigating police and thereby vouch for the credibility of the police investigation and testimony. Such a limited interpretation is not warranted. 'Us' clearly referred to everyone who was evaluating the testimony presented: the jurors, the court[,] as well as the attorneys….The context was clear when the statement was [made]—that anyone looking at the evidence presented would see that the witnesses' testimony would show that the defendant was the murderer. Clearly such argument was warranted and did not prejudice the jury.

Appellant further complains that calling the witnesses 'friends of the defendant' was improper as that was a fact not in evidence. The record clearly shows that this was a reasonable inference and the prosecutor committed no misconduct by stating such.

[For instance,] Tyreeke Smith testified that he had a friendly relationship with the defendant although he and the decedent were closer. In his interview with the police[,] he was asked why he didn't tell the police what he had seen, [and] he responded he was scared and he "just got out of the car with Louie. Me and him really not close like me and [Windley] was but still I be with Louie." (N.T. 8/12/15, p. 26). Reginald Green testified at trial "Yeah. I know him….My friend Lou." (N.T. 8/12/15, p. 101).

[In any event], [defense counsel] in his opening statement clarified his position:

> No matter how many times [the prosecutor] says the fact that these witnesses are his are my client's friends, or his boys, or whatever, that's not evidence that they are my client's friends. These are not my client's friends at all. The fact that they were at the same bar that night and they may know of my client does not make them his boys or his friends. In fact, they have said that they were the friends of the victim, not my client. So, again, it is not what [the prosecutor] says. It is what you hear from that witness stand. (N.T. 8/11/15, p. 50).

PCRA Court Opinion, filed 7/2/2020, at 12-13.

Accordingly, the PCRA court concluded Appellant was not entitled to relief on his ineffective assistance of trial counsel claim. We agree with the PCRA court's sound reasoning. ***See Johnson***, ***supra***. When read in context, the prosecutor's comments did not constitute improper vouching for the credibility of the police, but were comments fairly presenting the Commonwealth's version of the evidence with oratorical flair. ***Hanible***, ***supra***. Further, the prosecutor's statements were supported by the evidence and the appropriate inferences to be drawn therefrom. ***Id.*** Thus, Appellant is not entitled to relief on his ineffective assistance of counsel claim.

Appellant next points to the following excerpt from the prosecutor's closing statement, which the prosecutor made immediately after playing the videotape of the murder:

> There is nobody else there at that moment in time but the dude that we stipulated is Louie and Daquan Windley and then, and then we talk about the evidence that's there, we all heard about semi-automatic weapons. What do they do when you shoot one? It drops a fired cartridge casing rightward and rearward.
>
> **Yes, I called police officers and sometimes police officers take things loosely and arbitrarily draw lines like that. That is not what we do when we are dealing with life. We do it exactly, exactly. So when officers come in here and they make a mistake because they are human, yes, because I wanted exact, I said, Officer Taggart, do me a favor. Go out there and I know it is a lot to ask of you. I will owe you a lot later. You will be on your hands and knees at 15th and Huntingdon in the middle of the day, looking at a piece of paper. Get it right, please. Get it right.**
>
> Any doubt? Red to red. What's above it? Yellow to yellow. What's below it? Yellow to yellow, red, white, red, white, pebble, this weird double pebble, double pebble. It is like a fingerprint that's out there in this random distribution of pebbles into the

- 13 -

sidewalk and, **yes, they got it right**, at least as it relates to this fired cartridge casing, and where is it? Well, where would you expect it to be? One, two, the red band and building. (Indicating).

Take me back to that video at 19:54.

Let's see where Louis was standing as to the evidence he left behind.

\*\*\*

What you see here, it is a red building. It is the abandoned building that we are talking about here. When he fired and those people reacted, where is he? What is he standing in front of, and what is he shooting, and what does that leave behind? Fired cartridge casings.

**We don't do things arbitrarily like this. We do things exactly** and they are exactly where you would expect them to be.

N.T., 8/17/15, at 134-36 (bold added).

Appellant contends the statements bolded in the excerpt above constituted prosecutorial misconduct since the prosecutor improperly suggested the police and the prosecutor are aligned, thus improperly vouching for the credibility of the police, who gathered the ballistics evidence. Specifically, he contends the prosecutor improperly vouched for the credibility of the police's testimony and evidence regarding the location of the fired cartridge casings.

In rejecting Appellant's claim, the PCRA court relevantly stated:

A review of the entire transcript clearly shows that the prosecutor's remarks were a fair response to the arguments presented by the defense. Trial counsel had attacked the investigation by the police, strenuously arguing they failed to prepare complete diagrams or pictures with the correct context and that crime scene officers had gone out to the crime scene the weekend prior to trial, attempting to fix their failure. (N.T. 8/17/15, pp. 99-109). The Commonwealth addressed trial

counsel's attacks, acknowledged the deficiencies[,] and explained what supplemental work was performed by crime scene unit officers. The prosecution's statements were not improper, were made to combat the tirade against the officers in this case by the defense in his closing, were minimal[,] and clearly were not such as to unavoidably deny the defendant a fair trial.

PCRA Court Opinion, filed 7/2/2020, at 14.

We agree with the PCRA court's sound reasoning. The prosecutor's remarks were supported by the record and fairly responded to arguments made by defense counsel. *See Hanible*, *supra*. In this vein, we note Officer John Taggart testified that, during trial, the prosecutor directed him to return to the scene of the murder in order to clarify precisely where the fired cartridge casings were located. N.T., 8/17/15, at 16-29. Thereafter, in his closing argument, defense counsel attacked the reliability of the crime scene investigation based, in part, on the delay and Officer Taggart's testimony. *See* N.T., 8/17/15, at 99-101. Accordingly, we agree with the PCRA court that trial counsel was not ineffective in failing to object to this portion of the prosecutor's closing statement. *Johnson*, *supra*, 139 A.3d at 1272 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

Finally, to the extent Appellant contends the PCRA court erred in dismissing his petition without an evidentiary hearing, we note that it is well-settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary."

- 15 -

*Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa.Super. 2008).  In the case *sub judice*, the PCRA court properly concluded that Appellant did not raise a genuine issue of material fact, and there is no legitimate purpose that would be served by further proceedings.  Accordingly, the PCRA court did not abuse its discretion in failing to hold a hearing.  ***See id.***

For all of the foregoing reasons, we affirm the PCRA court's dismissal of Appellant's first PCRA petition.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/9/20