J-S38004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.A.B., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.E.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 855 WDA 2021 |

Appeal from the Order Dated June 25, 2021
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): 029 of 2021

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.C.S.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.E.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 856 WDA 2021 |

Appeal from the Order Dated June 25, 2021
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): 028 of 2021

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: FEBRUARY 24, 2022**

S.E.K. (Mother) appeals from the orders, dated June 25, 2021, that involuntarily terminated her parental rights to her two children, A.C.S.B. (born in September of 2016), and D.A.B., Jr. (born in June of 2017), following the

_____

[*] Retired Senior Judge assigned to the Superior Court.

filing of the termination petitions by the Westmoreland County Children's

Bureau (WCCB).[1]  After review, we affirm.[2]

In her brief, Mother sets forth the following issues for our review:

1.  Was clear and convincing evidence presented to show that termination was warranted pursuant to 23 Pa.C.S.[] [§] 2511(a)(2), 2511(a)(5), 2511(a)(8), and [] 2511(b)?

2. Did the trial court abuse its discretion when it allowed the [WCCB] to introduce … Mother's criminal record where … Mother objected to her record's introduction on the grounds it was not relevant?

3. Did the trial court abuse its discretion when it … allowed the [WCCB's] expert witness, Dr. Neil D. Rosenblum, to offer expert opinion testimony that it was in the Child[ren]'s best interests for … Mother's parental rights to be terminated where … Mother objected to Dr. Rosenblum's qualifications due to his disciplinary history and record of unethical practices in child custody cases?

Mother's brief at 4.

We review an order terminating parental rights in accordance with the

following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must

---

[1] Although the notices of appeal from the termination orders, dated June 25, 2021, appear on the trial court docket as having been filed on July 27, 2021, they are time stamped as having been filed on July 22, 2021.  Thus, we determine that the appeals were timely filed within the 30 days allowed pursuant to Pa.R.A.P. 903(a).

[2] These matters were consolidated *sua sponte* by this Court by order dated August 20, 2021.

stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 958 A.2d at 276. Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We have reviewed the certified records, the briefs of the parties, the applicable law, and the comprehensive opinion authored by the Honorable Justin M. Walsh of the Court of Common Pleas of Westmoreland County, filed on September 1, 2021. We conclude that Judge Walsh's well-reasoned opinion properly disposes of the three issues raised by Mother. Of particular note,

- 3 -

Judge Walsh points out that at the termination hearing, Mother left the courtroom for the brief lunch recess and did not return. Thus, Mother did not even provide testimony on her own behalf. Accordingly, we adopt Judge Walsh's opinion as our own and affirm the orders appealed from on that basis.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/24/2022

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, COMMONWEALTH OF PENNSYLVANIA

## ORPHANS' COURT DIVISION

IN RE:                                )
ADOPTION OF:                          )
    A.C.S.B.                      )
<del>████████████████████</del>          )    No.    28 of 2021
    D.A.B., JR.                   )
<del>████████████████████</del>          )    No.    29 of 2021
                                      )

### PURSUANT TO APPELLATE PROCEDURE RULE 1925(a)
### ORDER OF COURT

This matter was scheduled before the Court on Petitions for Involuntary Termination of Parental Rights under 23 Pa.C.S.A. § 2511, filed by the Westmoreland County Children's Bureau (hereinafter "WCCB") on March 18, 2021. The WCCB sought to involuntarily terminate the parental rights of birth mother S.E.K. <del>████████████</del> (hereinafter "Mother") and birth father D.A.B. <del>████████████</del> (hereinafter "Father"). At the time of the hearing, held on June 24, 2021, Father appeared along with his counsel, Emily Smarto, Esq. Likewise, Mother appeared initially along with her counsel Stephen Crevak, Esq. Prior to the start of the hearing, Father and his counsel executed paperwork to voluntarily relinquish his parental rights. Following a colloquy of Father's rights on the record, the Court accepted his voluntary relinquishment and excused both Father and his attorney. Further, it is noted that, during the course of the hearing, Mother appeared to the Court to fall asleep while seated at counsel table. Additionally, Mother failed to return to the courtroom following a brief recess for lunch and was not available to offer any testimony on her own behalf.

CLERK-ORPHANS' COURT

2021 SEP -1 P 1:50

FILED
WESTMORELAND COUNTY
REGISTER OF WILLS

1

EXHIBIT

B

After careful consideration of the evidence presented at the hearing, the Petitions to Involuntarily Terminate the Parental Rights as to Mother were granted based upon the findings of fact and applicable law.

The relevant portions of Section 2511, establishing the grounds under which a court may terminate parental rights, are as follows:

§ 2511. *Grounds for involuntary termination.*

(a) *General rule.* – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, six (6) months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and are not likely to be remedied within a reasonable period of time, and termination of parental rights would serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would serve the needs and welfare of the child.

* * *

(b) *Other considerations.* – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by

2

the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

## I. FACTUAL AND PROCEDURAL HISTORY OF THE CASE

The factual history of this case begins nearly two years ago, when the WCCB received a referral that a child had passed away while in the care of Mother and Father. The WCCB provided services to the parents before the children were removed from their care at the Adjudication Hearing on October 11, 2019, which included offender's counseling and drug and alcohol services. These issues remained largely unaddressed throughout the course of the dependency matter, with Mother being found to have only made minimal progress towards reunification in any permanency review hearing.

The WCCB petitioned this Court to terminate the parental rights of Mother and Father on March 18, 2021. At that point, the children had already been in placement for a period of 15 months, with Mother showing still only minimal progress towards alleviating the circumstances that necessitated placement. A hearing on these Petitions took place on June 26, 2021.

In the hearing itself, the Court notes a few facts regarding the concerning behavior that Mother exhibited. First and foremost, her instant drug screen taken prior to the start of the hearing indicated that Mother was positive for THC and cocaine. Secondly, during the course of testimony taken in the morning, the Court noted on the record that Mother appeared to be falling asleep at counsel table. Finally, when the hearing was recessed for a short break, Mother did not return to the courtroom for the remainder of the hearing, even prior to her opportunity to testify on her own behalf.

3

## II. ANALYSIS

On appeal, Mother argues that the Court erred in finding that the Agency reached its evidentiary burden relative to each of the statutory grounds for termination cited in the Court's Order for Termination (Sections 2511(a)(2), 2511(a)(5), 2511(a)(8) and 2511(b). Additionally, Mother argues that the Court committed reversible error by admitting Mother's criminal history into the record over Mother's objection and by qualifying Dr. Neil Rosenblum as an expert witness over Mother's objection. Lastly, Mother contends that the Court committed reversible error by considering her criminal history as relevant evidence in this matter.

*1.     Factual Sufficiency of Findings Pursuant to Sections 2511(a)(2), 2511(a)(5), 2511(a)(8) and 2511(b)*

First, the Court will address whether termination was warranted based upon the facts supported by the record under the various sections of the Adoption Act; namely, sections 2511(a)(2), 2511(a)(5), 2511(a)(8), and 2511(b). It is a well-settled principle of law that an appellate court will defer to the trier of fact on issues related to findings of fact, absent evidence that such findings are wholly unsupported by the record. ▄▄▄▄▄▄. Again, it is worth noting that, aside from the evidence that her counsel was able to elicit during cross-examination of the WCCB witnesses, Mother put forth no evidence of her own to counter any of the factual testimony presented against her because she failed to return to the courtroom following a short recess.

To warrant termination under Section 2511(a)(2), the petitioner must show by clear and convincing evidence that the repeated and continued incapacity, abuse, neglect or refusal of a parent has caused a child to be without essential parental care, control or subsistence, and that the causes of such incapacity, abuse, neglect or refusal cannot or will not be remedied. The evidence

4

presented to the Court indicated that the Children were still considered dependents and in the care and custody of the WCCB for a lack of parental care and control. Beginning at the time when the dependency case was initiated in October 2019, and continuing until the date of the hearing, the WCCB identified drug and alcohol issues, mental health issues, parenting deficiencies, and the fact that Mother is an indicated perpetrator of physical abuse as issues that Mother needed to address. Testimony was presented from Jean DeFilippis of ARC Point Labs that Mother, over the life of the case, had tested positive for non-prescribed substances 71 times out of the 103 successful screens that she submitted. As recently as one week prior to the hearing, Mother tested positive for a metabolite of cocaine and ethanol. An instant screen administered to Mother prior to the start of the hearing also indicated that Mother was positive for THC and cocaine, but those results still needed to be verified by the lab. Although Mother did complete a mental health evaluation, she last participated in mental health treatment in July 2020. To assist with parenting, the WCCB referred Mother for the Substance Abuse Family Education (SAFE) parenting program and hands-on parenting through the Monessen Family Center, parent-child interaction therapy through In-Clusion, and therapeutic visitation through Nevach, Inc. Mother has been inconsistent in her participation with any of these services; in fact, she has not been permitted to engage in anything other than supervised visitation since the inception of the dependency case.

The Court found by clear and convincing evidence that Mother's children have been without essential parental care, control and subsistence due to her incapacities and neglect. Additionally, the Court found that these same incapacities and neglectful conduct will not be remedied by Mother. At the time of the hearing, the children had been in placement under a

5

dependency order for approximately 20 months, and Mother had not demonstrated anything more than minimal progress towards allowing the children to return to her.

For these reason, the Court found that the WCCB satisfied the evidentiary burden under Section 2511(a)(2) and that termination would be warranted, pending the further 2511(b) analysis.

Under Section 2511(a)(5) of the Adoption Act, the Court would be justified in terminating parental rights if:

> [t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, six (6) months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and are not likely to be remedied within a reasonable period of time, and termination of parental rights would serve the needs and welfare of the child.

Similarly, Section 2511(a)(8) requires a showing that the child has been removed from the care of the parent by the court or under a voluntary agreement for a period of at least 12 months, the conditions which led to the removal or placement of the child continue to exist, and termination of parental rights would best serve the needs and welfare of the child. Because of the stark similarity in these subsections, the Court will analyze them concurrently.

As stated previously, the children were removed from Mother's care by an Order of Court following an adjudication hearing in October 2019. At the time of the hearing, the children had been out of Mother's care for approximately 20 months. The conditions causing removal, such as the drug and alcohol, mental health, parenting, and perpetrator of abuse conditions, all remained unresolved at the time of the hearing and are not likely to be remedied within any reasonable amount of time. The WCCB recommended Mother to utilize an abundance of services to attempt to address these conditions, including drug and alcohol providers, mental

6

health providers, parenting providers, and therapeutic parenting providers. The needs, welfare, and best interest of the children will be served by terminating Mother's parental rights, as the children can take steps towards achieving permanency through the adoption process with their foster family. Indeed, as part of the January 15, 2021 Permanency Review Order, this Court found that continuing to allow Mother to visit, even in a supervised manner, with the children posed a grave threat to their well-being.

Finally, as the Adoption Act requires a second analysis to be performed prior to the involuntary termination of parental rights, the Court is also obligated to consider whether the children's developmental, physical and emotional needs and welfare would be served by termination. Testimony was taken on this point from the WCCB Caseworker Janice Carnicella and Dr. Neil Rosenblum. Both witnesses testified that there is, in fact, a bond between Mother and the children. The nature of that bond, however, appears to be non-beneficial due to the immense trauma that the children have experienced with Mother and the lack of any commitment to or follow-through with the services designed to improve the relationship between them on the part of Mother. Dr. Rosenblum recommended that the permanency goal for the children should be changed from reunification to adoption. The Court further found that terminating the parental rights of Mother would be in the best interest of the children because it would establish an attainable end to the uncertainty that has characterized their lives for the past two years.

For all of the foregoing reasons, the Court found by clear and convincing evidence that sufficient facts existed to warrant the termination of the parental rights of Mother under subsections 2511(a)(2), 2511(a)(5), 2511(a)(8) and 2511(b) of the Adoption Act.

7

## 2.    Relevancy of Mother's Criminal Record

Mother's next argument is that the Court abused its discretion when it admitted WCCB/Petitioner's Exhibit 1 into evidence. Prior to the hearing, the WCCB provided Mother with notice of proposed exhibits. Mother prepared a Motion *in Limine*, arguing that four of the more than twenty entries in her criminal record, should be excluded as either being irrelevant to the proceeding or untimely. One such record identified by Mother was withdrawn from the exhibit by the WCCB, as it referred to an arrest made against Mother, but the charges were ultimately dropped. By way of counter-argument, the WCCB asserted that the criminal history was relevant to demonstrate a continuing pattern of behavior by Mother.

"Relevant evidence" is defined as evidence that tends to establish a material fact or supports a reasonable inference or presumption regarding a material fact. *Com. v. Kennedy*, 598 Pa. 621, 959 A.2d 916 (2008). Evidence may also be deemed to be "relevant" if it makes a fact at issue more or less probable. *Id.* Depending upon the circumstances of a case, a criminal history of a parent in a termination of parental rights hearing may be relevant. *See In re Adoption of C.D.R.*, 111 A.3d 1212 (Pa.Super. 2015).

In this matter, two of the criminal cases identified, namely CR-4107-2011 and NT-89-2014, pertain to drug charges for Mother. Mother argues that these are so far removed from the lives of the children because of how long ago the cases were brought that they should be deemed irrelevant. The WCCB argues that these matters are relevant to demonstrate the consistent pattern that Mother has been using marijuana for several years. This evidence tends to establish the fact that Mother's substance abuse issues are longstanding and that, insofar as they continue to exist as of the time of the hearing, they are not likely to be remedied in a reasonable amount of time.

8

The final criminal matter identified is a traffic case in which Mother was cited for driving while on a suspended or revoked license. Again, the WCCB argument as to why this case is relevant is that it demonstrates the continuous pattern of Mother's behavior. The Court agrees that it tends to show that Mother behaves in a reckless manner, without regard for the restrictions placed upon her by the law. The Court views this behavior as an indicator of the mental health instability that Mother faces, as well as the poor judgment that incapacitates Mother and prevents her from providing essential care to the children.

For the foregoing reasons, the Court ruled that this portion of Mother's criminal history is relevant and admissible in the case at bar. Because these particular matters in Mother's criminal history only made a *de minimis* contribution to the culmination of evidence presented, the Court believes that, even absent the consideration of these facts, sufficient evidence still existed to warrant termination of Mother's parental rights.

### 3.    *Consideration of the Opinion of Dr. Neil Rosenblum*

Lastly, Mother argues that the Court abused its discretion by admitting the opinion evidence of Dr. Neil Rosenblum, a licensed psychologist who performed an interactional evaluation between the children and their foster family and the children and Mother, as well as a mental health assessment on Mother. The basis for Mother's argument is that Dr. Rosenblum had been the subject of professional discipline on two separate occasions. In each instance, one which took place in 1991 and the other in 2015, a written statement was issued outlining the admitted misconduct and the discipline that would be applied to Dr. Rosenblum's practice. In 1991, when Dr. Rosenblum acted in a dual capacity of counselor and evaluator in a custody matter and made custody recommendations to the court without having contact with one of the

9

parties, he was fined and was obligated to practice under supervision. In 2015, after Dr. Rosenblum issued a recommendation after only meeting with one parent who resided locally in Allegheny County and not with the other parent who resided in the State of New Jersey and who had already submitted her own custody evaluation, Dr. Rosenblum was suspended for 30 days and was placed on probation for a period of 12 months following the suspension, in addition to fines and costs assessed to him. Finally, he agreed to complete additional ethics training courses. Dr. Rosenblum was fully restored to his active license on August 30, 2017.

The Pennsylvania Supreme Court has stated that it is well-settled that the standard for qualifying an expert witness is a liberal one, and the decision rests in the sound discretion of the trial court. *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 664 A.2d 525, 528 (1995). Under the Pennsylvania Rules of Evidence, an expert witness may offer an opinion to the court if his or her scientific, technical, or specialized knowledge is greater than that of a layperson; if his or her knowledge will assist the court to determine a fact in issue; and if his or her methodology is generally accepted in the relevant field. Pa.R.E. 702. Once an expert offers an opinion, it is up to the court to determine the veracity of the testimony and the appropriate weight it should be given. *Miller*, 664 A.2d at 528.

Prior to offering his opinion as to the appropriate permanency goal for these children, Dr. Rosenblum's qualifications as an expert were presented through testimony elicited by the WCCB and subjected to cross-examination by Mother. After hearing testimony regarding Dr. Rosenblum's education, employment history, and experience in offering court testimony, the Court was satisfied with his credentials and recognized him as an expert witness under Rule 702. No evidence was produced or law cited to indicate that, as a result of Dr. Rosenblum's two disciplinary actions, his professional opinions should be stricken from a proceeding. Because Dr.

10

Rosenblum testified as to the methodology he used in completing the interactional evaluations of both Mother and the children and the foster family and the children, the Court did not give much weight to Dr. Rosenblum's prior disciplinary actions. As stated above, after conducting these interactional evaluations, Dr. Rosenblum indicated that it was his professional opinion that the children and Mother do not have a necessary and beneficial bond and that changing the goal of the permanency plan from reunification to adoption was in the best interest of the children.

Because neither Pennsylvania law nor any portion of the agreements reached by Dr. Rosenblum and the State Board of Psychology would seem to bar him from offering expert testimony, the Court qualified Dr. Rosenblum as an expert and found his testimony to be credible and helpful in reaching a decision in this matter. For these reasons, the Court did not abuse its discretion in either qualifying Dr. Rosenblum as an expert or utilizing his opinion to support the termination of Mother's parental rights.

## III.  CONCLUSIONS

Following a full-day trial on this matter, the Court found that the WCCB was able to present sufficient evidence to justify termination of Mother's parental rights under Sections 2511(a)(2), 2511(a)(5) and 2511(a)(8) of the Adoption Act. Additionally, the Court found that termination would serve the best interest of the children under Section 2511(b). The Court did not abuse its discretion by either admitting the entries of Mother's criminal history specifically objected to on the record or by admitting the expert testimony of Dr. Neil Rosenblum in the areas of interactional evaluations and mental health assessments.

11

For all of the foregoing reasons, the Court involuntarily terminated the parental rights of

Mother ~~S.K.~~ as to the minor children ~~A.C.S.B.~~ and ~~D.A.B., JR.~~

BY THE COURT:

_____, J.
JUDGE JUSTIN M. WALSH

ATTEST:

_____
Clerk of Orphans' Court

cc:   Debra M. Nicholson – WCCB Solicitor
      Emily Smarto, Esq. – Counsel for Birth Father
      Stephen Crevak, Esq. – Counsel for Birth Mother
      Leslie Uncapher, Esq. – Guardian *ad litem*

12